STATE of Missouri, Respondent,

v.

Alan L. ECHOLS, Defendant,

and

Clarence and Kelvin Kellerman,
Intervenors–Appellants.

No. 75393.

Supreme Court of Missouri,
En Banc.

March 23, 1993.

William L. Hall, Independence, for appellants.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

## PER CURIAM.

Clarence Kellerman and Kelvin Kellerman filed an action to set aside a bond forfeiture and requested the return to them of $100,000 which they had furnished for Alan Echols to post a cash bond. The court denied relief. The Kellermans have appealed, contending that the condition of the bond was satisfied when Echols appeared for trial and the court did not have authority to allow Echols to remain at large after the return of the verdict. Following opinion by the Missouri Court of Appeals, Western District,[1] this Court granted transfer. *Rule 83.03*. Affirmed.

On October 20, 1990, Alan Echols was charged in a two-count complaint filed in the Circuit Court of Jackson County with murder in the first degree and armed criminal action. On October 22, Echols was taken into custody and appeared before an associate circuit judge who set bail at $100,000, fully secured. On October 26, Clarence Kellerman, the grandfather of Echols, delivered to the department of criminal records a cashier's check in the amount of $100,000.[2] Kellerman was told by the personnel in the records office that a cash bond could not be posted in Kellerman's name but could only be posted in the name of Echols. Kellerman turned the check over to the court personnel who filled in a bond form in the name of Echols. Echols signed the bond. Echols was given a receipt for the $100,000, and an assignment form was stamped on the back, which Echols signed, by which Echols assigned the receipt to Kellerman. Kellerman was given a form to sign which was headed "Notice." This informed him that when a cash bond is posted the receipt will be made in the name of the defendant and "[a]ny money posted will be considered by the Court as belonging to the defendant." The notice further stated that "[b]y depositing this cash you are relinquishing any claim you may have to the bond money." The notice further stated that in the event the defendant was found guilty, all assessments against the defendant, such as fines, court costs, and various other fees, would be deducted from the cash bond before any money was refunded to the defendant. The notice further stated, "[Y]ou may claim any refundable money at the conclusion of the charge(s) only if the defendant has properly assigned his/her bond receipt to you." The form also contained a paragraph headed "Acknowledgment" stating that the notice had been read and that it was understood that all assessments and fees may be deducted from the money deposited as the bond. Clarence Kellerman signed that form. Echols was thereupon released from custody.

Prior to trial the state waived the death penalty. Echols was tried in the circuit court, and on July 17, 1991 the jury returned a verdict finding him guilty of murder in the first degree, assessed the punishment at life imprisonment without probation or parole, found him guilty of armed criminal action, and fixed the punishment

---

1. This opinion is in large part that of the Court of Appeals, authored by the Honorable William E. Turnage.

2. Kelvin Kellerman is the uncle of Echols and contributed to the $100,000.

at 80 years imprisonment. Echols had appeared at trial and was in court when the jury returned and its verdict was read.

After the court received the verdict, the state requested the court to order Echols into custody. Instead, the court allowed Echols to remain free on the $100,000 cash bond, stated that the amount of the bond would be increased by $60,000, and stated that Echols would have until noon on July 19 to post the additional $60,000.

■ On July 18, the state filed a motion for reconsideration of the continuation of bail and argued that the court had no authority to allow Echols to remain free once the verdict was received. At a hearing on that motion, the court found that it did not have authority to continue Echols on bond after the verdict was returned and entered an order setting aside the bond and ordering Echols to surrender or be taken into custody. On the next day, the court entered an order revoking Echols' bond and issued a warrant for his arrest. Echols had been ordered to appear at noon on July 19 after the verdict was read, but he did not appear and, so far as the record shows, he failed to appear in court since the verdict was returned.

Thereafter, Clarence Kellerman and Kelvin Kellerman filed a motion to intervene in order to assert a claim to the cash bond. The motion to intervene was sustained, and the court set aside the order revoking the bond. The court thereafter held a hearing in which it considered the claim of the Kellermans to the bond money on the grounds that they had supplied the money, that Echols had appeared for trial, and that the court had no authority to allow Echols to go at large after the return of the verdict and, therefore, the Kellermans were entitled to the return of the money posted as bond.

The court denied relief to the Kellermans and entered an order forfeiting the bond. The Kellermans appealed.

Rule 33.01 and § 544.455 [3] provide that any person charged with a bailable offense shall be entitled to release pending trial and upon appeal. The court is given the right to set the conditions for release that will reasonably assure the appearance of the accused. One of the conditions the court is allowed to impose is to require the execution of a bond in a stated amount with sufficient solvent sureties or the deposit in the registry of the court of the amount of the bond in cash. *Rule 33.-01(d)(3), § 544.455.1(3).* As stated, the amount of the bond in this case was set at $100,000, and that amount was deposited in the registry of the court.

The Kellermans complain that they were not given the right to act as sureties, and that by furnishing the money for Echols to post his bond, they should be treated as sureties.

In *People v. Castro,* 119 Misc.2d 787, 464 N.Y.S.2d 650 (Sup.Ct.1983), the court gives an excellent history and treatment of cash bail in criminal cases. The court stated that the distinctions in the rights, duties and obligations between bail bondsmen and depositors of cash bail originate in English common law. At common law, bail bonds carry with them a stringent degree of responsibility by the one posting the bond. The strict theory in the thirteenth century was that all chattels of the sureties were at the king's mercy, and those who put up bail were liable to render their own bodies to jail. This harsh practice was alleviated by the practice of having the court assess a financial penalty if the surety did not produce the prisoner. From this, the concept of forfeiture of bail bonds was developed as a financial penalty assessed against the surety if he failed to produce the defendant. In short, in a bond with a surety, the responsibility for insuring the defendant's appearance is on the surety. *Id.* 464 N.Y.S.2d at 655.

The court further stated that, in contrast, cash bail is a creature of statute and that absent statutory authority there is no right to deposit cash as bail because cash bail did not exist at common law. In cash bail the law looks to the money as surety for the appearance of the defendant rather than to the surety. This follows from the

**3.** All statutory references are to RSMo 1986, unless specified otherwise.

fact that the money deposited with the court insures the defendant's appearance, and there is no promise by a surety to pay money in the future if the defendant fails to appear. The money in a cash bail is held by the court as trustee on the terms that if the defendant appears as required, the money will be returned to the depositor, and if the defendant fails to appear, the money shall be given to the appropriate authority. *Id.* 464 N.Y.S.2d at 655–56.

■ By observing the distinction between a surety bond and a cash bond, the basis for the differences contained in the statutes related to the two forms of bail become rational. The depositor of bail money has no obligation for the custody or appearance of the defendant. The money deposited is the security for the appearance of the defendant. This is not to say that one who posts cash bail for another cannot cause the defendant to surrender and thus fulfill his bond condition. However, the law places no duties or obligation on one who posts a cash bail for another for the appearance of the defendant when required. As explained, the cash serves this purpose, and such cash is presumed to be the property of defendant.

■ *Castro* further held that the money deposited in a cash bail is deemed to be the property of the defendant, even though a third party may actually supply the money. *Id.* 464 N.Y.S.2d at 656. This is for the reason that the law looks to the money to insure the defendant's appearance and, therefore, it must be his, otherwise there would be little or no incentive for the defendant to appear in court because he would lose nothing by failing to appear. *Id.* 464 N.Y.S.2d at 657. There is a limitation on the principle that the money deposited in a cash bail is deemed to be the property of the defendant and that it is deemed to be defendant's property only for the purpose of the deposit. Once the defendant has appeared at all times required by law and the criminal action has been terminated, then the depositor of cash bail has a superior right to the return of the cash. *Id.* 464 N.Y.S.2d at 657.

Other courts have held that money deposited for cash bail is presumed to be the property of the defendant even though the money was actually supplied by a third party. In *Mundell v. Wells*, 181 Cal. 398, 184 P. 666, 668 (bank 1919), the court stated that the law "attributes the ownership of such a fund to the defendant, and one who furnishes money for the release of a person held under a criminal charge is presumed to know that fact." 8 C.J.S. *Bail* § 89 (1988) states that money posted as cash bail is conclusively presumed to belong to the accused.

So strong is the rule that the money posted in a cash bond is presumed to be the property of the defendant that the court in *State ex rel. Glidden v. Fowler*, 192 Wis. 151, 212 N.W. 263, 266 (1927), stated, "[N]o third person will be heard to assert the title to the fund until the purposes of the statutory deposit have been fully accomplished."

■ The Kellermans contend that the terms of the cash bond were met when Echols appeared for trial. This contention is refuted by the plain terms of the bail bond, which stated that the condition of the bail was that Echols was to appear in court on November 5, 1990 and not to depart without leave, and to appear from time to time thereafter as required by the court and throughout the pendency of the action for trial and all other proceedings, "including the rendition of final judgment and sentence herein...." The notice on the form signed by Kellerman stated that Kellerman could claim any refundable money at the conclusion of the charges if the defendant had assigned the bond receipt to him. This plainly informed Kellerman that appearance for trial was not sufficient to claim the bail money.

■ The Kellermans also contend that the court materially increased the risk which they incurred when the court continued Echols on bond after the verdict. The argument runs that after Echols knew that he had been convicted and that he faced the possibility of spending the rest of his life in prison without parole, the chances were substantially increased, if not assured, that he would not return to court. This argu-

ment is answered by the discussion above which distinguishes a surety bond from a cash bond. The Kellermans were not sureties and had no rights or obligations of a surety. Their risk was assumed when they posted the cash, which the law conclusively presumes to be the property of the Echols.[4]

 There is also some argument that under Rule 30.16 and § 547.170 the court had no authority to allow Echols to remain at large after the verdict. Those provisions apply only to appeal bonds, and Echols had not appealed. Further, the prohibition contained therein against releasing a defendant who has been sentenced to life imprisonment applies only to those who have been sentenced. That would not apply to Echols because he had not been sentenced at the time he was released after the verdict. Rule 33.01 and § 544.455 allow the court to release a defendant charged with a bailable offense pending trial and later during appeal. The release is required to be made upon condition that the accused shall appear in any court in which the case is prosecuted as required and that he will submit to the order, judgment and sentence of the court. No contention is made that Echols was charged with an offense which was not bailable. No authority is cited which requires the court to terminate a bond once a verdict has been returned. Certainly under Rule 33.01 and § 544.455.1 the court had authority to allow Echols to remain free on bond after the verdict was received and before sentencing.

This Court does not pass upon the wisdom of the trial court in allowing Echols to remain at large after the verdict was returned but confines its holding to the fact that such action was authorized under the law.

 It might be observed that upon receipt of the verdict, the court could have followed Rule 33.06. That rule allows the court on its own motion to modify the requirements for Echols' release on bond after Echols had been convicted. Under that rule the court could set new requirements for his release and could have remanded him to the custody of the sheriff until the new conditions were complied with.

 Missouri provides a very narrow remedy to one having a financial interest in the subject matter of the forfeiture of a bail bond. "The court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture." *Rule 33.14.* This rule gives trial court discretion to set aside the forfeiture at the request of an interested person. Our review is necessarily limited to whether the trial judge abused discretion. Where the undertaking of the bond has clearly been violated and the defendant remains at large without reasonable excuse or explanation, there is no abuse of discretion in failing to set aside the forfeiture.

The denial of relief is affirmed.

All concur.

---

4. Kellerman faults the personnel in the criminal records office for not allowing him to sign a bond as a surety. The action of such personnel followed the law of cash bail as discussed herein. Further, the language of the notice and acknowledgment that Kellerman signed follows the law by stating that any money deposited would be considered as belonging to the defendant.