Mary HOLLERAN,
Plaintiff/Respondent,

v.

Michael T. HOLLERAN, et al.,
Defendants/Appellants.

No. 74705.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 22, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 1999.

Application for Transfer Denied Sept. 21, 1999.

Mary Elizabeth Ott, Clayton, for Appellant.

Robert S. Adler, Rothman, Sokol, Adler & Sarachan, P.C., Clayton, Jack R. Charter, St. Louis, for Respondent.

PAUL J. SIMON, Presiding Judge.

Michael T. Holleran (defendant), Anne Holleran (Anne), John Holleran (John), and Diane Scott (Diane), (collectively appellants) appeal the judgment entered by the circuit court imposing a lien on bond money deposited by Anne and belonging to Anne, John, and Diane, and awarding the funds to Mary Holleran (wife), for satisfaction of child support arrearages.

Appellants contend the trial court erred in denying their request to void the impo-

sition of a lien upon assets posted upon a bond in a criminal proceeding, not part of the instant litigation, and to utilize those assets to satisfy child support arrearages accruing in the instant matter because the actions of the trial court in granting the lien request and denying appellants' request to void the lien herein violated the provisions of *State v. Echols,* and the Fifth and Fourteenth Amendments of the U.S. Constitution and Article I, Section 10 of the Missouri Constitution as the same constituted an improper taking and denied appellants due process of law, sought to utilize assets of a third party to satisfy the debt of a contemnor, and is void against public policy in favor of satisfaction of bond terms and the constitutional requirement of reasonable terms of bonding. We reverse and remand.

■ We affirm the trial court's judgment if it is supported by substantial evidence and is not against the weight of the evidence, and it correctly declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo.banc 1976).

The record reveals that the marriage of defendant and wife was dissolved by a Decree of Dissolution (Decree) on August 9, 1994, in Cause No. 933–3380. Custody of the couple's two children, John T. Holleran and Sean M. Holleran, was awarded to wife. Defendant was ordered to pay $742.60 per month in child support for both children.

On April 15, 1997, defendant was charged by indictment, under Count I, with the offense of Assault in the First Degree, a class A felony, and, under Count II, with the offense of Armed Criminal Action in Cause No. 971–0967. He was incarcerated and bond was set at $250,000, with ten percent cash authorized, pursuant to Rule 33.17.

On May 1, 1997, wife filed a motion for contempt against defendant, requesting that he be held in contempt for allegedly failing to pay wife the sums required pursuant to the Decree. On August 28, 1997,

the trial court issued its Findings, Conclusions, Order and Judgment of Contempt, wherein it found that defendant had failed to pay all sums required under the Decree and was indebted to wife in the amount of $19,710.23. However, the trial court found that he was incarcerated at that time, and held that the "method for purging contempt and paying back arrearage at $19,-710.23" be stayed until defendant was released from jail.

On October 2, 1997, defendant was released from jail following the deposit of a $25,000 cashier's check with the Circuit Clerk by Anne, defendant's mother, and the posting of real estate by various other parties as security. Upon delivering the $25,000 cashier's check to the Circuit Clerk, Anne received a form informing her that she was posting bond for defendant. Subsequently, Anne received a bond receipt for $25,000, on which only defendant's name appeared. The bond, signed by Anne as surety and defendant as principal, provided that should defendant "abide and submit himself to the orders, judgment, sentence and process of said court," then the bond would be "null, void and of no effect otherwise to remain in full force and effect in accordance with law ..." Further, the bond provided in pertinent part:

... and all sureties herein submit themselves to the jurisdiction of the said court in which such indictment may be found or information filed or to any division thereof to which this cause may be legally sent, or to any other court to which said cause may be removed by change of venue, and irrevocably appoint the clerk of said court or courts as their agent upon whom may be served for them all notices, motions, pleadings and process concerning the forfeiture of this bond.

Anne was also given a form entitled "Return of Cash Deposits" which informed her that in order for a surety who put up the deposit on a bond to receive a refund of their deposit the:

1. .... case must be closed or the bond must be discharged by an order of the Court.

2. .... party requesting the return of the bond money must apply in person to the Cashier Room 101, with their original receipt and proper indentification.

\* \* \*

On the same day that defendant was released from jail, the trial court found that defendant had paid $1,500 toward his outstanding arrears of $19,710.23 and ordered that he appear before the trial court on October 14, 1997, to determine a payment plan to "pay back the remainder of his outstanding arrears of $18,210.00." The record does not reveal what transpired on October 14, 1997 or whether defendant appeared before the trial court on that day.

Although not part of the record, the parties agree that the Assistant Circuit Attorney for the City of St. Louis requested that the trial court impose a lien on the bond posted for defendant to secure payment of his delinquent child support obligation to wife. On January 26, 1998, the trial court ordered that a lien in the amount of $18,210.23 be placed on the $25,000 deposited with the Clerk of the Circuit Court as bond in the criminal case. Further, the trial court directed the clerk, upon resolution of the criminal case, that "$18,210.23 of said bond be paid over [to] the Parent Location of the Clerk of the Circuit Court as trustee" for wife as payment of defendant's unpaid child support through August 27, 1997. On February 9, 1998, the Circuit Clerk issued its check to the Child Support Division in the amount of $18,210.23. Subsequently, wife received that amount from the Office of the Circuit Clerk, Child Support Division.

On March 26, 1998, defendant filed his motion to deny request for lien or in the alternative to reconsider imposition of lien on the bond. Defendant alleged that the request for the lien was made without prior notice to him and that no copy of the motion and/or order was provided to defendant "at anytime subsequent to January 26, 1998." He alleged that he was not made aware of the request for imposition of the lien until "counsel's third review of the file occurring on or about March 24, 1998," because it was not included in the trial court file prior to that time. Defendant contended that a hearing was required to determine whether he possessed the assets posted upon the bond, and that if the assets did not belong to him, the action of placing a lien on property not belonging to defendant reached a "disallowed result." He also alleged that "principles of equity" precluded the conversion of "other non-party assets" to the use of the alleged contemnor in satisfaction of the alleged contempt. Defendant prayed that the trial court set aside and deny the imposition of the lien upon the bond posted in the criminal case. On that same day, the trial court ordered that the $18,210.23 paid by the Circuit Clerk's office to wife be "immediately returned" in full to the registry of the court. The trial court set hearing on defendant's motion for April 30, 1998; however, at that time it did not make a finding as to whether wife was entitled to the $18,210.23 from the bond. On March 30, 1998, counsel for defendant requested *ex parte* that the trial court issue an order to stay and hold in abeyance "until further order of the Court, or Disposition on the motion set for 4/30/98" the lien placed on the bond. The trial court granted the request.

On April 1, 1998, defendant was acquitted of all charges and his criminal case was concluded. Thereafter, Anne, John, defendant's father, and Diane, defendant's sister, (collectively intervenors) attempted to procure the sums deposited for the bond; however, their requests were denied and they were told that only the sum of $6,789.77 remained. Defendant's counsel then requested *ex parte* that the trial court enter an order requiring the Circuit Clerk to immediately return to the trial court's

registry the $18,210.23 paid to wife. The trial court held that the order placing a lien on the bond did not include a "pay out order" and therefore no payout was authorized. The Circuit Clerk was ordered to show cause why the relief requested by defendant should not be granted. Further, the trial court issued a memorandum informing the parties that the order to show cause would be heard at the hearing on April 30, 1998.

On April 22, 1998, the Division of Child Support filed its motion to dismiss defendant's motion to deny request for lien or reconsider lien contending that if the funds from the bond belonged to defendant, his motion should be dismissed because his criminal case was resolved and the funds should be legally vested in wife. Further, the Division of Child Support contended that if the funds from the bond did not belong to defendant, then he had no standing to complain of a lien on the assets of a third party "in who's [sic] property [he] has no legal interest."

On April 24, 1998, defendant filed his reply to the Division of Child Support's motion to dismiss. In his reply, he alleged that the lien on the bond did not include a pay out order vesting the assets to wife and that the trial court lacked jurisdiction to impose a lien upon assets not belonging to him and/or to enter an order interfering with the trial court's prior order in regards to the bond. Further, he alleged that he had standing to object to actions taken in a case in which he was a party and that the trial court should allow Anne, John, and Diane to join the proceedings. Defendant also filed his motion opposing the setting of a review hearing on April 30, 1998, and requested that the trial court continue the review hearing until sometime after May 13, 1998.

Also on April 24, 1998, intervenors filed their petition to join or in the alternative to intervene stating that they were interested parties in the instant matter because they each had an interest in the property which was the subject of husband's motion.

In their petition, they alleged that approximately $20,000 of the $25,000 bond was derived from the funds of Anne and/or John; and, that approximately $5000 of the funds deposited upon the bond were Diane's. Further, they alleged that no portion of the $25,000 deposited on the bond were "comprised of funds" belonging to defendant and that they had provided the aforementioned funds for the sole purpose of posting the bond and guaranteeing the appearance of defendant in the criminal case, and that they were neither provided notice of, nor did they consent to the utilization of such funds to satisfy defendant's indebtedness. Also, intervenors alleged that their demand for the return of their funds from the Circuit Clerk had been denied and requested that the trial court enter an order requiring the Circuit Clerk to payout the funds in accordance with their individual contributions.

On April 30, 1998, the trial court granted defendant's motion for continuance and set the hearing for defendant's motion to set aside the lien, intervenors' petition, and the Division of Family Child Support's motion to dismiss for May 26, 1998. On that same day, wife deposited $5,500 with the Circuit Clerk.

At the hearing, appellants presented the testimony of intervenors and William F. Wiese (Weise), vice-president and cashier of Southern Commercial Bank, who presented the original $25,000 cashier's check dated October 2, 1997, negotiated by Anne as the remitter and made payable to the Circuit Clerk. Anne testified that about seven or eight days after defendant was found not guilty, she received a call from the Circuit Clerk's office instructing her to "come down and pick up my check from the bond." Anne testified that she went to the Circuit Clerk's office and that upon showing the proper identification was handed a check for "six thousand and some odd dollars." Additionally, Kim Talley and Kim Killian (Killian), employees of the Finance Department at the Municipal Court Division testified. Killian stated that on

February 9, 1997, pursuant to a court order, she deducted $18,210.23 from the bond, "cut a check" for that amount and delivered it to the Child Support Division. Also at the hearing, the parties stipulated that the Circuit Clerk was not a party to the action and that on February 18, 1998, wife received $18,210.23 from the Office of the Circuit Clerk, Child Support Division.

On June 11, 1998, the trial court entered its order and judgment, relying on *State v. Echols,* 850 S.W.2d 344[3] (Mo.banc 1993), holding that "even if the amounts deposited for the cash appearance bond were provided by Intervenors, those amounts were deemed to be the property of [defendant]." Further, the trial court held that even if intervenors deposited the funds for the bond, they had no right to the return of the funds until after the conclusion of the criminal charges pending against defendant. The trial court reasoned that because the lien in favor of wife was imposed prior to the conclusion of the criminal charges pending against defendant, the lien was therefore imposed at a time when the funds held by the Circuit Clerk were presumed to be the property of defendant. Thus, the trial court denied defendant's motion to deny and intervenor's petition and ordered the Circuit Clerk to pay wife those amounts returned by her to the registry of the court pursuant to the order dated March 26, 1998.

Appellants' only point on appeal consists of several points of error.

As a preliminary matter, we note that a point which contains several diverse claims of error is not in compliance with Rule 84.04(d). *Shoemaker v. Ekunno,* 960 S.W.2d 527, 531 (Mo.App. E.D.1998). In its point, appellants claim that the actions of the trial court in granting the lien and denying their request to void its imposition violated the provisions of *Echols,* and constituted an improper taking and denied them due process of law, thus violating the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Missouri Constitution.

Additionally, appellants allege that the trial court sought to utilize assets of a third party to satisfy the debts of a contemnor and the imposition of the lien was void as against public policy. Finally, appellants allege that the trial court failed to follow the procedure required of a forfeiture or lien and therefore acted illegally and beyond its jurisdiction. Responding, wife argues that the trial court's imposition of the lien was in accordance with the pronouncements of *Echols,* and that appellants failed to preserve for our review their claims regarding: (1) the United States and Missouri Constitutions; (2) public policy violations; and (3) the trial court's failure to follow required procedures for a bond forfeiture or a lien imposition.

Since we find that appellants' claim that the actions of the trial court in granting the lien and denying their request to void its imposition violated the provisions of *Echols* is dispositive, we shall not address the remaining allegations of error.

■ Wife cites *Echols* for the proposition that the money deposited on a cash bond in a criminal proceeding is deemed to be the property of the defendant and that third parties that post bond monies are presumed to know the law and the "fact that the monies will be so treated as belonging to defendant." Appellants rely on the holding in *Echols* to assert that while the money deposited on a cash bond in a criminal proceeding is "deemed" to be the property of the defendant, that designation is limited to the purpose of the bond which is to insure the appearance of the defendant in the criminal proceeding.

In *Echols,* Alan Echols (Echols) was charged with murder in the first degree and armed criminal action and his bail was set at $100,000. *Id.* at 345. Echols' grandfather delivered to the department of criminal records a cashier's check in the amount of $100,000 but was told by personnel in the records office that a cash bond could only be posted in defendant's name. Grandfather thus turned the check

over to the court personnel who filled in a bond form in the name of defendant. Defendant signed the bond and was given a receipt for the $100,000, and an assignment form was stamped on the back, which defendant signed, by which he assigned the receipt to grandfather. Grandfather signed a form entitled "Notice" which informed him that any money posted for the cash bond belonged to defendant and that by depositing the cash, grandfather was relinquishing any claim he had to the bond money. Defendant was released but appeared for his trial on July 17, 1991, and was found guilty of murder in the first degree; however, he was allowed to remain free on the $100,000 cash bond, increased by the amount of $60,000, and with the condition that he appear before the court on July 19 to post the additional $60,000. Despite being ordered to do so, defendant did not appear on the designated date and following a hearing on the state's motion for reconsideration of the continuation of bail, the court issued an order revoking defendant's bond and issued a warrant for his arrest.

Thereafter, grandfather and Clarence Kellerman (Kellerman) filed a motion to intervene in order to assert a claim to the cash bond. The motion to intervene was sustained, and the court set aside the order revoking the bond. The court then held a hearing in which it considered the claim of grandfather and Kellerman to the bond money on the grounds that they had supplied the money, that defendant had appeared for trial, and that the court had no authority to allow defendant to remain free after the return of the verdict. The court denied relief to grandfather and Kellerman and entered an order forfeiting the bond. Complaining that they were not given the right to act as sureties and that by furnishing the money for defendant to post his bond, they should be treated as a sureties, grandfather and Kellerman appealed. Relying on *People v. Castro*, 119 Misc.2d 787, 464 N.Y.S.2d 650 (N.Y.Sup. Ct.1983), our Supreme Court found that money deposited in a cash bail was pre-sumed to be the property of Echols even though a third party may have actually supplied the money. *Echols*, 850 S.W.2d at 347[3]. This is for the reason that the law looks to the money to insure the defendant's appearance and, therefore, it must be his, otherwise there would be little or no incentive for the defendant to appear in court because he would lose nothing if did not appear. *Id.* Thus, the Court reasoned that because Echols did not appear in court on the designated date, and the terms of the bond required Echols not to depart without leave, and to appear from time to time thereafter as required by the court and throughout the pendency of the action for trial and all other proceedings, "including the rendition of final judgment and sentence herein . . . ." the terms of the bond were not met, grandfather had no right to claim the bail money, and the bail money was forfeited. *Id.* Further, the Court held that because the money deposited by grandfather constituted a cash bond which belonged to Echols, grandfather and Kellerman were not sureties and had "no rights or obligations of a surety." *Id.* at 348.

Here, the facts are clearly distinguishable from *Echols* because the bond was neither revoked nor forfeited. Further, at no time did the trial court order the Clerk of the Circuit Court to pay out the $18,-210.23 to wife; rather, as part of its order the trial court mandated that the money be held in trust pending the resolution of defendant's criminal case. Indeed, upon discovering that wife had been wrongfully paid $18,210.23 of the bond, the trial court ordered her to immediately return that amount in full to the registry of the court. Furthermore, upon depositing the $25,000 cash bond defendant signed as the principal on the bond and Anne signed as the surety. Anne received the receipt for the bond containing defendant's name, and received a "Return of Cash Bond Deposit" form which informed her that "in order for a surety . . . .who put up the deposit on a bond, to receive a refund of their deposit,"

the case "must be closed or the bond must be discharged by an order of the Court." Subsequently, defendant was acquitted of all charges and his case concluded with defendant complying with the terms of the bond. Therefore, the dispositive holding in *Echols* does not apply in this factual situation. However, our Supreme Court recognized the principle of law set forth in *Castro*:

> There is a limitation on the principle that the money deposited in cash bail is deemed to be the property of the defendant and that it is deemed to be defendant's property only for the purpose of the deposit. Once the defendant has appeared at all times required by law and the criminal action has been terminated, then the depositor of cash bail has a superior right to the return of the cash. (citation omitted).

*Echols,* 850 S.W.2d at 347.

Thus, even though the rule states that the money posted as a cash bond is presumed to be the property of the defendant, our Supreme Court recognized that once the terms of the bond are fully accomplished the depositor of cash bond has a superior right to the return of the money. *Echols,* 850 S.W.2d at 347. Furthermore, this principle is consistent with the Missouri Statutes and Rules.

Rule 33.01 and section 544.455 RSMo 1994 (all further references hereinafter will be to RSMo 1994 unless otherwise indicated) provide that any person charged with a bailable offense shall be entitled to release pending trial and upon appeal. The court is given the right to set the conditions for release that will reasonably assure the appearance of the accused. Rule 33.01(b). One of the conditions the court is allowed to impose is to require the execution of a bond in a given sum and the deposit in the registry of the court of ten percent, or such lesser percent as the judge directs, of the sum in cash or negotiable bonds of the United States or any political subdivision thereof. Rule 33.01(d)(5), section 544.455.1(5). If there

is a breach of a condition of the bond, the court may declare a forfeiture of the bond. Rule 33.14. Moreover, if, without sufficient cause or excuse, a defendant fails to appear for trial or judgment, or upon any other occasion when his presence is required, the bond will be forfeited. Section 544.640. However, when the conditions of the bond have been satisfied the court shall release the obligors. Rule 33.15.

Under the facts of this case, we conclude that Anne had a superior right to a return of the money deposited on behalf of defendant and that the trial court erred in its application of the law set forth in *Echols.* Therefore, we need not answer appellants' other points of error and remand this matter to the trial court for further proceedings consistent with this opinion.

Judgment reversed and remanded.

KATHIANNE KNAUP CRANE, J. and LAWRENCE E. MOONEY, J., concur.