STATE of Missouri, Respondent,

v.

Mark Anthony WILSON, Defendant,

L & C Investment Group d/b/a Bada Bing Bail Bonds, Appellant.

No. WD 65435.

Missouri Court of Appeals, Western District.

Aug. 15, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 26, 2006.

Application for Transfer Denied Oct. 31, 2006.

Dwight K. Scroggins, Jr., Prosecuting Attorney, Matthew R. Liles, Assistant Prosecuting Attorney, St. Joseph, MO, for respondent.

William Karl Jennings, Independence, MO, for appellant.

Before HOWARD, P.J., and ELLIS and HARDWICK, JJ.

VICTOR C. HOWARD, Presiding Judge.

L & C Investment Group, Inc. ("L & C") appeals the judgment of the circuit court of Buchanan County forfeiting a $100,000

bond it guaranteed for the appearance of Mark Anthony Wilson in a criminal case of drug trafficking. L & C contends that its obligation under the bond was satisfied when Wilson appeared for a plea agreement, and that the circuit court's stay of execution for 30 days of Wilson's nine-year sentence, upon the end of which Wilson failed to turn himself in to the law enforcement center, was an unagreed-upon modification of their bond contract under which they had no obligation.

Wilson was charged with the class B felony of drug trafficking in the second degree on April 1, 2004. Bond was set at $100,000 on April 29, 2004. On August 25, 2004, Wilson posted a surety bond through L & C, doing business as Bada Bing Bail Bonds. The conditions of the bond required Wilson to "attend all court hearings as set by this court or any court to which this case is transferred or appealed," and to "submit to any orders, judgments and sentence of this court or any court hearing this case."[1] On September 13, 2004, Wilson and his attorney appeared in the circuit court to enter into a plea agreement on the charge. L & C did not appear at the hearing. Wilson entered a guilty plea agreeing to the State's sentence recommendation of nine years incarceration in the Missouri Department of Corrections. The circuit court agreed to a stay of execution of Wilson's sentence until October 14, 2004, with the bond to remain in effect. At the hearing, the judge said:

> The Court: At 9:00 a.m. [on October 14, 2004] you'll be ordered to surrender yourself at the law enforcement center to begin the nine-year sentence in the Department of Corrections.
>
> Now, you'll remain on bond. If your bonding company surrenders you on the bond or somehow says, "We're not going to keep you on the bond," then that will end. Do you understand that?
>
> Wilson: Yes, sir.
>
> The Court: So you're released on a stay of execution subject to being on the bond that you previously posted a few weeks ago.
>
> Wilson: Okay.
>
> The Court: And sometimes I've had experience where bonding companies just come in and say they want off the bond. And if they do, then you're going to go in early. You understand that?
>
> Wilson: Yes, sir.

Wilson failed to appear at the Buchanan County Law Enforcement Center on October 14, 2004, to begin serving his sentence. It was not until over a year later, on November 30, 2005, that Wilson was arrested and taken to the Department of Corrections.

The State of Missouri filed a Motion for Final Judgment of Default and Application for Writ of Scire Facias on November 30, 2004, to move for judgment of default on Wilson's recognizance, and forfeiture of the bond. On January 26, 2005, notice of the hearing on the motion was mailed to Wilson's address and to L & C. The circuit court heard the motion on February 28, 2005, and entered judgment on March 3, 2005, ordering forfeiture of the bond. L & C filed a motion to set aside the judgment of default on March 28, 2005, which was denied by the court in a hearing on April 29, 2005. L & C filed a notice of appeal on May 10, 2005.

■ In its first point, L & C contends that the circuit court erred in ordering forfeiture of the bond because their obli-

---

1. The form used by the Buchanan County Circuit Court was one apparently supplied by the Office of the State Courts Administrator ("OSCA"), and referenced "[Supreme Court] Rule 33.01," and "[Sections] 491.620, 544.455, 575.270, RSMo."

gation under the terms of the bond agreement ended when Wilson was present for sentencing on September 13, 2004, and that it had no further obligation to secure his appearance at the law enforcement center after execution of sentence was delayed. L & C argues that the "Power of Attorney" given to their agent was limited to an appearance bond.[2] L & C also argues that the court's grant of allowing Wilson to remain free after sentencing increased the risk to it as the surety and was a condition to which it did not agree. L & C asks this court to determine when a surety's obligation ends. L & C makes no objection that the proceedings of the bond forfeiture were in any way improper.

■ Our review of an order denying a motion to set aside a judgment is governed by our deference to the sound discretion of the trial court, and we will affirm the decision "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *State v. Siemens*, 12 S.W.3d 776, 779 (Mo.App. W.D. 2000). An action for forfeiture of a bond is civil in nature and is, in essence, an action "to enforce the surety's contract with the State, executed by the former when the recognizance was entered into." *State v. Haverstick*, 326 S.W.2d 92, 98 (Mo.1959) (citation omitted). Thus, principles of law relating to contracts apply. *Id.*

■ The purpose of the law allowing a surety to post bond for a defendant is to assure the defendant's appearance. *State v. Echols*, 850 S.W.2d 344, 346 (Mo. banc 1993). The history of this law was stated by the Missouri Supreme Court:

> At common law, bail bonds carry with them a stringent degree of responsibility by the one posting the bond. The strict theory in the thirteenth century was that all chattels of the sureties were at the king's mercy, and those who put up bail were liable to render their own bodies to jail. This harsh practice was alleviated by the practice of having the court assess a financial penalty if the surety did not produce the prisoner. From this, the concept of forfeiture of bail bonds was developed as a financial penalty assessed against the surety if he failed to produce the defendant. In short, in a bond with a surety, the responsibility for insuring the defendant's appearance is on the surety.

*Id.* "Sureties know and solemnly contract that the defendant shall appear and abide the orders of the court and in the event of his default are bound by their obligation." *State v. Hinojosa*, 364 Mo. 1039, 271 S.W.2d 522, 524 (1954).

The court may release a defendant from custody under a number of circumstances.

> Rule 33.01 and § 544.455 [RSMo] allow the court to release a defendant charged with a bailable offense pending trial and later during appeal. The release is required to be made upon condition that the accused shall appear in any court in which the case is prosecuted as required and that he will submit to the order, judgment and sentence of the court.... No authority is cited which requires the court to terminate a bond once a verdict has been returned. Cer-

---

**2.** L & C contends that language in their Power of Attorney that stated the authority of its agent "is limited to appearance bonds and cannot be construed to guarantee defendant's future lawful conduct, adherence to travel limitation, fines, restitution, payments or penalties, or any other condition imposed by a court not specifically related to court appearance," limits their obligation. However, L & C cites no authority for the proposition that this language overcomes the statutory obligations in Missouri of a company acting as surety for a bail bond.

tainly under Rule 33.01 and § 544.455.1 the court had authority to allow [the defendant] to remain free on bond after the verdict was received and before sentencing.

*Echols,* 850 S.W.2d at 348. Furthermore, Rule 33.06 permits the court to modify conditions for release on bond after conviction. *Id.*

L & C directs us to no case law, court rule, or statute which requires the court to give the surety notice of the disposition of the case, the status of the defendant, or whether the court has continued or terminated bond when the defendant is released after verdict. It is common "for courts to grant short stays of execution of sentence to allow defendants to put their affairs in order before they start to serve their sentence." *United States v. Wray,* 389 F.Supp. 1186, 1191 (W.D.Mo.1975) (citation omitted). We find no support for L & C's proposition that it did not have a duty to keep itself apprised of the status of Wilson's case.

Determination of when the obligation of the surety ends is quite specific. The release of the obligor on a bond is governed by Rule 33.15, which states:

> When the conditions of the bond have been satisfied the court shall release the obligors. When a forfeiture of the bond is set aside the court may release the obligors. Any surety may be released upon depositing cash in the amount of the bond or by a timely surrender of the defendant.

Thus, a surety on a bond is released only when the conditions of the bond have been satisfied, or by depositing cash in the amount of the bond, or by surrendering the defendant to custody of law enforcement. "A surety is entitled to discharge as a matter of law only when the principal is prevented from making his bonded appearance by an act of God, an act of the law, or an act of the obligee, the State of Missouri...." *State v. Jones,* 491 S.W.2d 241, 243 (Mo.1973). Additionally, "[i]f bond forfeiture is ordered and the surety can subsequently prove the defendant is incarcerated somewhere within the United States, then the bond forfeiture shall be set aside and the surety be responsible for the return of the defendant." § 374.770.1 RSMo 2000. L & C makes no argument that any of those conditions apply.[3]

The terms of the original bond agreement required Wilson to "submit to any orders, judgments and sentence of this court or any court hearing this case." We find that L & C had a continuing obligation to keep track of the defendant and assure the defendant's appearance and compliance with court orders to appear to begin serving his sentence. Had L & C kept itself informed of Wilson's case, and did not want to be obligated for Wilson's release upon the stay of execution of his sentence, L & C could have surrendered Wilson to the custody of law enforcement. The first point is denied.

In its second point, L & C contends that the circuit court erred in granting the State's motion for forfeiture of the bond because the State failed to introduce the bond into evidence. This is so, L & C argues, despite the fact that the court took

---

3. L & C relies on *State v. Batson,* 765 S.W.2d 676 (Mo.App. S.D.1989), apparently for support that a surety on a bail bond may be relieved of obligation for certain post-trial actions. However, *Batson* deals with a probation revocation, and the court held the surety was not liable under the bond, stating:

> "While a defendant is free on probation, a surety cannot terminate his liability by surrendering a defendant to the court as there is no warrant or commitment for the defendant." *Id.* at 679. Since Wilson was obligated for commitment to the Department of Corrections, *Batson* is inapplicable.

judicial notice of its own case file of the matter in the hearing on the forfeiture motion.

██ A court may take judicial notice of its own records. *Arata v. Monsanto Chem. Co.*, 351 S.W.2d 717, 721 (Mo.1961); *Knorp v. Thompson,* 352 Mo. 44, 175 S.W.2d 889, 894 (1943); *State v. Armstrong,* 605 S.W.2d 526, 532 (Mo.App. E.D. 1980). In the February 28, 2005, hearing on the forfeiture motion, the State asked the circuit court "to take judicial notice of the case file, and our motion, Your Honor, and that Mr. Wilson is still not present today." The Court replied: "All right." We find no requirement, as suggested by L & C, that the circuit court was required to individually notice and physically examine the bond paper in order for it to be introduced into evidence. This point is without merit.

The judgment of the circuit court is affirmed.

ELLIS and HARDWICK, JJ., concur.