STATE of Missouri, Plaintiff,

v.

Kirk JACKSON, Defendant.

No. SC 92532.

Supreme Court of Missouri,
En Banc.

Oct. 30, 2012.

Rehearing Denied Dec. 18, 2012.

Louis R. Horwitz, Lou Horwitz LLC, St. Peters, for Jackson.

Breck K. Burges and Rebecca Shaffar, St. Charles County prosecutor's office, St. Charles, for the State.

Robert P. McCulloch, Clayton, for Missouri Association of Prosecuting Attorneys, which submitted a brief as a friend of the Court.

LAURA DENVIR STITH, Judge.

Kirk Jackson requests relief following the St. Charles County circuit court's setting of a $75,000 cash-only bond, arguing that the setting of a cash-only bond violates the requirement of article I, section 20 of the Missouri Constitution that "all persons shall be bailable by sufficient sureties, except for capital offenses."

The constitutional directive that persons be bailable by sufficient sureties does not require that only commercial bondsmen can stand as sureties. Historically, and today, other third parties and a reasonable cash bond required of defendant have been permitted to stand as surety so long as the bail requirement is used to serve the purpose of securing the defendant's appearance at trial rather than for preventing pretrial release or for other disallowed purposes. Moreover, under article I, section 32 of Missouri's Constitution adopted in 1992, courts can deny bail or impose special conditions on bail if necessary to protect the victim or the community. For all of these reasons, the trial court did not err in exercising its discretion to require a cash-only bond.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 29, 2012, the State issued a warrant for Mr. Jackson's arrest. According to prosecutors, Mr. Jackson operated a massage therapy business and secretly videotaped clients while they undressed. One female client purportedly became suspicious and, following her massage, discovered a camera hidden in a tissue box in the corner of the room. Local police conducted an undercover operation and soon thereafter searched the business pursuant to the warrant. The raid allegedly led to the discovery of a camera hidden in a wall hanging, and a subsequent search of Mr. Jackson's home led to the seizure of an external hard drive containing images of female clients partially or fully nude. Mr. Jackson was arrested and sought release on bail.

All agree that the right to bail is governed by Missouri's constitution and this Court's rules. Article I, section 20 provides that "all persons shall be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great." Article I, section 32 provides that "upon a showing that the defendant poses a danger to a crime victim, the community, or any other person, the court may deny bail or may impose

special conditions which the defendant and surety must guarantee." Rule 33.01(b) provides that a court "shall set such conditions for release as will reasonably assure the appearance of the accused." Rule 33.01(d) provides that the court "shall in all cases release the accused upon his written promise to appear"—that is, release the defendant on his own recognizance—unless "the court determines that such release will not reasonably assure the appearance of the accused."

Rule 33.01(d) provides a variety of methods of ensuring the defendant's return if the trial court believes that conditions are necessary to reasonably assure the accused's appearance, only one of which is to "require the execution of a bond in a stated amount with sufficient solvent sureties." Other methods of providing reasonable assurance, that is, surety, of the appearance of the accused set out in Rule 33.01(d) include providing for a supervising custodian, restricting the defendant's location and travel, requiring regular personal reports, requiring the deposit of 10 percent or less of the bond with the court itself, or requiring "the deposit in the registry of the court of the sum in cash or negotiable bonds . . ." and such other conditions as the court may find appropriate to assure the defendant's return, taking into account the many factors set out in that rule.[1]

Pursuant to Rule 33.01, the circuit court set Mr. Jackson's bond at $75,000, cash only, without the possibility of executing a 10–percent cash bond. On April 27, 2012, the State indicted Mr. Jackson on 14 counts of felony invasion of privacy for filming victims without their knowledge or consent. Mr. Jackson sought relief in the

---

1. Rule 33.01 states in relevant part:
(a) Any person charged with a bailable offense shall be entitled to be released pending trial . . .
(b) The court shall set such conditions for release as will reasonably assure the appearance of the accused . . .
(c) The release shall be upon condition that the accused will appear in the court . . .
(d) The court shall in all cases release the accused upon his written promise to appear, unless the court determines that such release will not reasonably assure the appearance of the accused. If the court so determines it shall impose one or more of the following conditions for his release which will reasonably assure such appearance:
(1) Place the person in the custody of a designated person or organization agreeing to supervise him;
(2) Place restriction on the travel, association, or place of abode of the person during the period of release;
(3) Require the execution of a bond in a stated amount with sufficient solvent sureties, or the deposit in the registry of the court of the sum in cash or negotiable bonds of the United States or of the State of Missouri or any political subdivision thereof;

(4) Require the person to report regularly to some officer of the court or peace officer, in such manner as the court directs;
(5) Require the execution of a bond in a stated amount and the deposit in the registry of the court of ten percent, or such lesser sum as the court directs, of such sum in cash or negotiable bonds of the United States or the State of Missouri or any political subdivision thereof;
(6) Impose any other conditions deemed reasonably necessary to assure appearance as required, including a condition requiring that the person return to custody after specified hours.
(e) In determining which conditions of release will reasonably assure appearance, the court shall, on the basis of available information, take into account the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character, mental condition, the length of his residence in the community, his record of convictions, and his record of appearance at court proceedings or flight to avoid prosecution or failure to appear at court proceedings.

Missouri court of appeals and now applies to this Court for relief pursuant to Rule 33.09.[2] He requests this Court to hold that the trial court's requirement that he post cash-only bail violates the provision of article I, section 20 that bail shall be permitted by "sufficient sureties."

## II. STANDARD OF REVIEW

■ Resolution of the issues presented requires interpretation of article I, section 20 and article I, section 32. "Constitutional interpretation is a question of law and is subject to *de novo* review." *Akers v. City of Oak Grove*, 246 S.W.3d 916, 919 (Mo. banc 2008).

## III. CASH–ONLY BAIL IS PERMITTED BY THE MISSOURI CONSTITUTION

Mr. Jackson argues that the judge's imposition of cash-only bail violates the provision in article I, section 20 of Missouri's Constitution that "all persons shall be bailable by sufficient sureties, except for capital offenses." This clause, under Mr. Jackson's analysis, prohibits courts from mandating cash-only bail and, instead, requires that courts provide defendants with the option of posting a surety bond and that only a third party can serve as a surety. He also contends that requiring cash-only bail serves to keep a defendant in jail rather than to secure his return from release.

*A. Missouri's Constitutional Requirement of "Sufficient Sureties"*

Missouri's first constitution, adopted in 1820, contained a bail provision identical to that used today. It provided: "That all persons shall be bailable by sufficient sureties, except for capital offences, when the proof is evident or the presumption great." Mo. Const. art. XIII, § 11 (1820). This provision seems to combine aspects of two earlier types of bail provisions utilized in America. The earliest colonial provision concerning the right to bail was the Massachusetts Body of Liberties of 1641, which provided: "No mans person shall be restrained or imprisoned by any Authority what so ever, before the Law hath sentenced him thereto, If he can put in sufficient securitie, bayle or mainprise, for his appearance." Donald B. Verrilli, Jr., *The Eighth Amendment and the Right to Bail: Historical Perspectives*, 82 COLUM. L.REV. 328, 337 (1982). The Northwest Ordinance embraced a similar expression, declaring that "all persons shall be bailable, unless for capital offenses, where the proof shall be evident, or the presumption great." Northwest Ordinance, July 13, 1787.

Missouri's 1875 constitution did not change this language other than to update spelling and grammar. Mo. Const. art. II, § 24 (1875). Missouri's current constitution, adopted in 1945, similarly repeats the wording of the earlier constitutions, stating that "all persons shall be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great." Mo. Const. art. I, § 20. It is as to the meaning of this provision of the 1945 Constitution that the parties disagree. Neither party cites any language in the debates of the delegates to the 1820, 1875 or 1945 constitutional conventions that explains the meaning of the words "sufficient sureties," and this Court's own review of the transcripts of those debates has found no discussion of

---

**2.** Rule 33.09 states in relevant part:
(a) If a court shall fail to set conditions for release, or shall set inadequate or excessive conditions, an application may be filed in a higher court by the accused or by the state, stating the grounds for the application and the relief sought.

the term.[3] This Court turns, therefore, to case law for guidance.

### B. Courts Addressing Use of Cash–Only Bail in Missouri and Elsewhere

While this Court's decisions have not had occasion to interpret article I, section 20 directly, in *State v. Echols*, 850 S.W.2d 344 (Mo. banc 1993), this Court did approve the use of a cash payment as surety for a defendant's appearance. The trial court had set defendant Echols' bail at $100,000, "fully secured." Echols' grandfather delivered a $100,000 check to court personnel, who then completed a bond form in Echols' name. Following a jury finding that Echols was guilty of first-degree murder and armed criminal action, the trial court set aside the bond and ordered Echols to surrender or be taken into custody.[4] Echols never returned.

This Court upheld the trial court's refusal of the grandfather's request to set aside the forfeiture of the $100,000 bond, stating that "[m]oney posted in a cash bond is presumed to be the property of the defendant" even if it was supplied by a third party. *Id.* at 347. This is because if the cash were not presumed to be the defendant's property, "there would be little or no incentive for the defendant to appear in court because he would lose nothing by failing to appear." *Id.* In other words, *Echols* reasoned that the cash stood as surety for the defendant's appearance, and if it were not the defendant's own cash or treated as such, then it would not be suffi-

cient to assure the defendant's appearance—it would not provide sufficient surety.

More than two-thirds of states have a constitutional provision equivalent to Missouri's provision that defendants must be bailable by "sufficient sureties." *See State v. Brooks*, 604 N.W.2d 345, 350 (Minn. 2000). Although the sufficient sureties provision has been in effect in many of these states for almost 200 years, cases addressing its meaning do not appear to have arisen until the last few decades. The reasoning in *Echols*, however, is consistent with that used by the five state courts that have upheld the use of cash-only bail over the objection that a third-party bondsman must be permitted to stand as surety under this constitutional language.

Perhaps the most detailed interpretation of the clause was given by the Iowa Supreme Court in *State v. Briggs*, 666 N.W.2d 573 (Iowa 2003). In *Briggs*, the trial court set the defendant's bail at "6,500 cash only." Following a comprehensive review of the history of bail, *Briggs* noted that commercial bail bonding was just beginning to emerge at the time of Iowa's constitutional ratification in 1846. As a new concept, the court found it improbable that the framers intended to "favor one particular method of surety—commercial bonding—by inclusion of the sufficient sureties clause." *Id.* at 583. Instead, *Briggs* concluded, the framers of

---

**3.** *See Journal of the 1820 Missouri State Convention*, (L.N. Henry & Co. 1820, *reprinted by* Statute Law Book Co.1905); *Debates of the Missouri Constitutional Convention 1875* (Isidor Loeb & Floyd C. Shoemaker, eds., State Historical Soc'y of Mo.1938); *Debates of the Missouri Constitution 1945* (transcribed by Stenotype Studios of St. Louis 1945). The delegates to the 1820 and 1945 constitutional conventions adopted the article concerning bail without debate, and the 1875 committee

expressed concern only with the words "proof is evident and the presumption great." *Debates of the Missouri Constitutional Convention of 1875*, vol. I at 444.

**4.** The court determined that allowing a defendant to remain at large following a verdict was permissible but declined to "pass upon the wisdom of the trial court in allowing Echols" to do so. *Echols*, 850 S.W.2d at 348.

the Iowa constitution did not intend that access to a surety be "tied specifically to a commercial bonding process." *Id.* at 582. Rather, the word "sufficient" was meant to be a qualification that provided a measure of discretion for judges to set the type and level of bail necessary to fulfill the purpose of bail, which in Iowa (as in Missouri) is to ensure the defendant's appearance at trial. *Id.* at 584.

A similar result was reached in *State v. Gutierrez,* 140 N.M. 157, 140 P.3d 1106 (N.M.Ct.App.2006). *Gutierrez* held that the word "sufficient" should be interpreted as granting courts the ability to consider a variety of bail types to accomplish most effectively the purpose of bail. The court found no evidence that the drafters of the New Mexico constitution intended to restrict the meaning of "sufficient sureties" to third-party bondsmen. Instead, it agreed with *Briggs* that a "judge must be provided with the discretion to determine, under the particular facts and circumstances of each case, the type of secured bond needed to accomplish" the purpose of securing the defendant's return for trial. *Id.* at 1111. The court held, therefore, that cash-only bond is permissible in certain circumstances. Courts in Alabama, Arizona and Colorado similarly have found that requiring cash-only bail does not violate their state constitutions. *See, e.g., Fullerton v. County Court,* 124 P.3d 866, 870 (Colo.Ct.App.2005); *Fragoso v. Fell,* 210 Ariz. 427, 111 P.3d 1027 (Ariz.App. 2005); *Ex Parte Singleton,* 902 So.2d 132 (Ala.Crim.App.2004).

Defendant argues that this Court should not follow these cases but instead should look to five other states that have held cash-only bail impermissible under constitutional provisions similar to Missouri's.

Typical of these cases are *State v. Brooks,* 604 N.W.2d 345 (Minn.2000) and *Smith v. Leis,* 106 Ohio St.3d 309, 835 N.E.2d 5 (2005).[5]

Neither *Brooks* nor *Smith* was able to find direct historical evidence as to the state constitutional framers' intent, so each instead looked to dictionary definitions. *Brooks* cited Alexander Burrill's 1850 *New Law Dictionary and Glossary,* which defined "surety" as "[o]ne who engages to be answerable for the debt, default, or miscarriage of another; one who undertakes to do some act in the event of the failure of another to do it, and as security for it being done." *Brooks,* 604 N.W.2d at 353. *Smith* referred to the 8th edition of Black's Law Dictionary, defining "surety" as "[a] person who is primarily liable for the payment of another's debt or the performance of another's obligation." *Smith,* 835 N.E.2d at 14. *Brooks* and *Smith* concluded that these definitions suggested that requiring a surety connotes one person assuming responsibility for another's obligation. *Brooks,* 604 N.W.2d at 353; *Smith,* 835 N.E.2d at 14.

But other definitions of "surety" are not so narrow. The current Black's Law Dictionary includes the meaning cited in *Smith* but also defines "surety" to include "a pledge, bond, guarantee, or security given for the fulfillment of an undertaking." *Black's Law Dictionary* (9th ed.2009). Webster's definition includes a variety of meanings, among which is "a pledge or other formal engagement given for the fulfillment of an undertaking." *Webster's Third New Int'l Dictionary* 2300 (1971).

Dictionaries predating Missouri's first constitution also gave expansive meaning

---

**5.** *See also State v. Golden,* 546 So.2d 501 (La.App.1989); *State v. Hance,* 180 Vt. 357, 910 A.2d 874 (2006); and *Lewis Bail Bond*

*Co. v. Gen. Sessions Court of Madison County,* 1997 WL 711137 (Tenn.Ct.App. Nov. 12, 1997).

to the word "surety." Samuel Johnson's Dictionary of the English Language defined surety as "security against loss or damage." (3rd ed.1766). The Royal Standard Dictionary similarly provided that a surety is a "security against loss." (2d ed.1804).

Nothing in these latter definitions requires that the surety be given by a third party as opposed to requiring the defendant to post the bond or security himself or herself, and, as noted in *Echols*, Missouri follows a broader definition.

*Echols'* approach is supported by examining how the practice of allowing bail developed in the United States. Scholars state that the system of bail as it is recognized in America today traces its origins to medieval England. Instead of keeping defendants in squalid prisons for indeterminate periods of time, feudal sheriffs would release an accused so long as they received a guarantee from a family member, friend or acquaintance that the accused would return on the day of trial. Rebecca B. Fisher, *The History of American Bounty Hunting As A Study in Stunted Legal Growth*, 33 N.Y.U. REV. L. & SOC. CHANGE 199, 206 (2009).

The American colonies initially adopted a system similar to the English surety system, but the ever-expanding, racially and ethnically diverse population required a more effective means of ensuring the return of defendants. *Id. See also Briggs*, 666 N.W.2d at 580. *Briggs* notes that, as a result, the personalized surety system eventually evolved into a commercial bond system, under which bondsmen collected fees from defendants in exchange for posting or guaranteeing their monetary bonds. *Id.* By the 1970s, an estimated 44 percent of all defendants arrested for felonies and misdemeanors used a bondsman to obtain their pretrial release. PAUL B. WICE, FREEDOM FOR SALE, 8 (1974). But that was not the case when the laws permitting bail first were adopted.

When the first Missouri constitution was enacted, the commercial bail bonds industry was insignificant or non-existent. The traditional form of surety in early America was a third party, such as a family member, friend or acquaintance, who was willing to promise the third party's personal money or property to secure the defendant's release. For example, in an 1819 case from St. Charles County, Missouri, the defendant, Francois Tayon, and two other men posted Tayon's bond with $1,000 worth of their goods and land. *US v. Tayon (St. Charles Cir. Ct. 1819), microformed on c54275 (Mo. State Archives).* In an 1829 case from the same county, the defendant was released after he and one other man "acknowledged themselves to be severally liable to the State of Missouri" for $250 secured by "their respective lands and tenements, goods and chattels." *State v. Anderson (St. Charles Cir. Ct. 1829), microformed on c54289 (Mo. State Archives).*

The earliest known true commercial bail-bond business was run by brothers Peter and Thomas McDonough of San Francisco. Their company, known as "The Old Lady of Kearny Street," had by 1898 established a niche underwriting bonds for defendants. Schnacke et al., *The History of Bail and Pretrial Release*, PRETRIAL JUSTICE INSTITUTE (Sept. 23, 2010). It was not until the mid–19th century, well after Missouri's first constitution was approved, that the practice of using a commercial bail bondsman to post bail became widespread in the United States. *See Briggs*, 666 N.W.2d at 580. *See also* Jonathan Drimmer, *When Man Hunts Man: The Rights and Duties of Bounty Hunters in the American Criminal Justice System*, 33 HOUS. L.REV. 731, 749 (1996).

There is also no indication that the 10–percent bonds (by which courts release an accused upon payment of a deposit with the court of 10 percent of the full amount and the promise to pay the remainder if the accused misses the court date) common today and requested by Mr. Jackson were utilized by courts at the time of Missouri's statehood. Missouri statutes did not mention 10–percent bonds until the 1972 enactment of section 544.455.[6]

The minor role played by commercial bondsmen at the time of Missouri's first constitution and the recognition by earlier cases in Missouri and elsewhere of the use of cash or property as bail supports the broader reading of "sufficient sureties" adopted in cases such as *Briggs* and *Gutierrez*.

Mr. Jackson also raises the argument that allowing the use of cash-only bail creates the risk of misuse of bail as a means of keeping defendants in jail by setting the amount of bail so high that a defendant has no realistic opportunity to post bail. The cases from other jurisdictions rejecting the use of cash-only bail also cite this concern as well as the concern that the purpose of bail is to protect the defendant, not the public.

This Court shares the concern expressed by these cases and by Mr. Jackson that cash-only bail should not be used to keep a defendant in jail unnecessarily pending trial. Missouri law is clear that the purpose of bail is to secure the defendant's appearance. Indeed, the transcripts of the 1875 Missouri constitutional debates show that the fundamental purpose of including the "sufficient sureties" provision in the 1875 constitution was "to secure the attendance

of the accused for trial and if that object is attained, all is." *Debates of the Missouri Constitutional Convention of 1875,* pg. 444.

The current constitutional provision is worded identically to the provision in the 1875 provision and repeatedly has been interpreted by Missouri courts to mean that "the only purpose of bond is to secure the appearance of the defendant at the trial." *State ex rel. Corella v. Miles,* 303 Mo. 648, 262 S.W. 364, 365 (1924). *Accord, Ex parte Chandler,* 297 S.W.2d 616 (Mo. App.1957) ("The purpose of bail is . . . to secure . . . appearance at the trial"). *See also Reynolds v. United States,* 80 S.Ct. 30, 32, 4 L.Ed.2d 46 (1959) ("The purpose of bail is to insure the defendant's appearance and submission to the judgment of the court"). Consistent with this purpose, Missouri law and this Court's rules provide that the purpose of bail is to "reasonably assure the appearance of the accused." *Section 544.455, RSMo Supp.2011; Rule 33.01.*

While in 1992 the people of Missouri expanded the purpose of bail to include protection of crime victims by adopting article I, section 32(2), they did not thereby permit use of bail to keep a defendant from being released. Rather, section 32 provides only that bail may be denied or special conditions imposed notwithstanding the right to bail with sufficient sureties under article I, section 20 "upon a showing that the defendant poses a danger to a crime victim, the community, or any other person." *Mo. Const. art. I, § 32(2).* Pursuant to this provision, as well as under this Court's Rule 33.01, Missouri courts can impose conditions on bail to protect

---

**6.** The impetus for articulating by statute various conditions for release was the federal Bail Reform Act of 1966. Enacted by Congress to revise the practices of bail, the act stated that a judge could require a defendant to post

bond "in cash of a sum . . . not to exceed 10 per centum of the amount of the bond." Bail Reform Act of 1966, Pub.L. No. 89–465, section 3146 (1966).

others as well as to secure defendant's return or even deny bail if the State shows that the defendant poses a danger to the victim or public.[7]

■ These provisions give the trial judge broad discretion in setting bail amounts and allow the judge to decide whether and how to set bail on a case-by-case basis following careful consideration of relevant factors. *See Chandler*, 297 S.W.2d at 617 ("[A]n accused might more easily succumb to the temptation to flee from some charges and under some circumstances than others").

■ None of Missouri's constitutional provisions, statutes or rules, however, permits the use of bail to keep a defendant in jail if the purpose of so doing is not to secure the defendant's appearance or to protect the victim, the community, or any other person. Use of cash-only bail or of any conditions for bail for this purpose is not permitted by Missouri law. But cash-only bail does not inherently preclude a defendant's release. Indeed, it allows the defendant and his or her family to avoid the 10–percent or higher nonrefundable charge usually made by commercial bondsmen to cover their risk in becoming surety for the defendant's appearance at trial. Furthermore, the cash posted can be used to provide restitution to the victim under the Crime Victims' Compensation Fund. *See* section 595.045, RSMo Supp.2011.

The problems identified by Mr. Jackson and the cases he cites are not with the use of cash-only bail per se but with abuse of cash-only bail provisions so as to set bail at an amount that the defendant cannot secure. In other words, it is a concern with the *amount* of bail, not with the *form* of bail permitted.

Concerns about the misuse of cash-only bail to keep a defendant in jail are not addressed by article I, section 20's provision that a person shall be bailable by "sufficient sureties," however, but rather by the provision in article I, section 21 of the Missouri Constitution providing that "excessive bail shall not be required."

■ "Since the only purpose of bond is to secure the appearance of the defendant at the trial, any bail fixed at more than is necessary to secure that appearance is excessive." *State ex rel. Corella v. Miles*, 303 Mo. 648, 651, 262 S.W. 364, 365 (Mo. banc 1924). Bail is not to be used as a means of punishment. *Chandler*, 297 S.W.2d at 616.

■ If bail is set higher than necessary to secure the defendant's appearance or to protect the public, it constitutes an impermissible punishment, contrary to the venerable presumption that a defendant is innocent until proven guilty. Rule 33.01(e) addresses these concerns by stating:

> In determining which conditions of release will reasonably assure appearance, the court shall, on the basis of available information, take into account the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character, mental condition, the length of his residence in the community, his record of convictions, and his record of appearance at court proceedings or flight to avoid prosecution or failure to appear at court proceedings.

■ The trial judge is required, therefore, to consider defendant's financial

---

7. To the extent that the cases cited by Mr. Jackson hold that cash-only bail is not permissible because the purpose of bail is to secure the defendant's rights rather than those of the public or court, they are inconsistent with article I, section 32 and with the purposes of bail under article I, section 20 of Missouri's constitution.

resources in setting bail as well as other relevant conditions, and, of course, article I, section 32 of Missouri's constitution also requires consideration of the safety of the victim and the community. "Bail is not excessive merely because a defendant is unable to secure it." *Dabbs v. State*, 489 S.W.2d 745, 748 (Mo.App.1972). But cash-only bail, like the setting of the amount of bail that may be secured through use of a commercial surety, must be used only for these permitted purposes, not to prevent a defendant's release when not necessary to secure the safety of the victim or the community or to secure the defendant's appearance at trial.

 Here, counsel specifically states that Mr. Jackson does not contest the amount of his bond and that he does not contend it is excessive; he contests only that the trial court had no authority under article I, section 20 to set a cash-only bond. For the reasons explained above, this Court rejects that argument. The trial court had the authority to set a cash-only bond as sufficient surety to secure Mr. Jackson's appearance at trial.

## IV. CONCLUSION

Considering these purposes and the history of bail as well as the numerous understandings of the word "sufficient surety," imposing cash-only bail does not violate article I, section 20 of the Missouri Constitution. This Court therefore rejects Mr. Jackson's request that this Court issue an order directing the trial court to permit 10% bond or third-party surety or that this Court itself issue such an order.

TEITELMAN, C.J., RUSSELL, BRECKENRIDGE, FISCHER and DRAPER, JJ., concur.