YATES, Judge.
Alonzo Williams and Jerrell Washington appeal from the trial court’s denial of their application for an injunction seeking to enjoin the City of Montgomery from requiring a cash bond on a capias warrant.
On September 6, 1998, Williams was arrested for possession of marijuana, driving with a suspended license, and driving without a license. At the time of his arrest, Williams had six outstanding capias warrants against him. Capias warrants are issued by the Montgomery Municipal Court against persons who have been convicted of misdemeanors, when they have lost or exhausted all rights of appeal and have failed to pay the fines imposed under their convictions or have failed to appear before the court and show the reason for their failure to pay. The six capias warrants were issued for Williams’s failure to pay fines imposed on convictions for failing to yield the right of way, running a stop sign, having an improper tag, two violations of the City’s noise ordinance, and giving a false name.
*517 There are four types of bail provided for in § 15-13-111, Ala.Code 1975: (1) cash bail; (2) judicial public bail; (3) professional surety bail; and (4) property bail. Cash bail is where cash in an amount equal to, or part of, the total sum of the bail is paid into court. Judicial public bail is where a defendant is released without any security; it is granted only when the defendants meet the requirements of § 15-13-145. Professional surety bail is where a qualified company issues a bond to the court on behalf of the defendant and becomes a surety on the bail. Property bail is where real property is pledged as a surety for the bail.
At the time of Williams’s arrest, the City had adopted a new bail policy with regard to capias warrants. The new policy provided that only cash bail or complete payment of the outstanding fines would be available under a capias warrant.
Williams was permitted to make bail on the new charges by any of the four methods set out in § 15-13-111. The record is unclear as to what type of bond Williams posted on the new charges; however, it is clear that he did post bond on those charges. On the six capias warrants, Williams could only make a cash bond or pay the amount of the fines owed on those convictions. Williams owed $719 in fines for his conviction on the six offenses underlying the capias warrants. Under the City’s new bail policy, Williams could have obtained his release only by either paying his fines ($719) or posting a cash bail of $500 per warrant ($3,000). Williams was unable to do either and remained in jail until September 8,1998.
On September 8, 1998, Williams filed in the circuit court an application for a temporary restraining order, and he petitioned for a permanent injunction against the City; Judge Curtis Springer, chief judge of the municipal court; and Patrick Murphy, the municipal court administrator, seeking to enjoin the City from implementing its new bail policy. That same day, the court denied the application for the temporary restraining order and set the matter for a hearing on the request for a permanent injunction.
On September 8, 1998, while the TRO hearing was proceeding, Williams went before a municipal-court judge for an indi-gency hearing. The judge found that Williams was not indigent. According to the record, if a defendant is found to be indigent, he is released; if the defendant is found not indigent, he is placed on probation and then released. On September 8, 1998, Williams was placed on probation and released from jail.
On September 16, 1998, Jerrell Washington was arrested and detained on a charge of trespass in the third degree. Washington was permitted to make bail on the trespass charge by any method set out in § 15-13-111. While Washington was detained, he was served with three capias warrants for his failure to pay fines totaling $1,216 on convictions for harassment, third-degree trespass, and third-degree theft. Washington could have obtained his release on the capias warrants by either paying the fines or posting cash bail in the amount of $500 per warrant ($1,500). On September 17, 1998, Washington went before a municipal-court judge for an indi-gency hearing; he was apparently found not indigent. He was placed on probation and then released.
On September 23, 1998, Williams amended his application to add Washington as an applicant. On September 25, 1998, the circuit court held the hearing on the request for a permanent injunction. The City argued that Williams and Washington (“the defendants”) lacked standing to seek the injunctions. The court noted in its order that the defendants had been released on probation shortly after their arrests, making them subject to arrest on another capias warrant if they did not comply with the conditions of their probation. Thus, the court found that the defendants had standing; the court denied *518 the motion for a permanent injunction. The defendants appeal.
The defendants argue that the City’s new bail policy violates Article I, § 16, of the Alabama Constitution; the Alabama Bail Reform Act of 1993, § 15-13-100 et seq.; and the Alabama Rules of Criminal Procedure. They also argue that the new bail policy violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in that, they argue, the new policy discriminates against poor defendants. We disagree.
Article I, § 16, of the Alabama Constitution provides:
“[A]ll persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great; and ... excessive bail shall not in any case be required.”
Section 16 secures to incarcerated defendants the right to nonexcessive bail “before conviction,” but it does not apply after there is a conviction. Post-conviction bail is not affected by § 16. Ex parte R.D., [Ms. CR-98-1269, May 28, 1999] — So.2d - (Ala.Crim.App.1999), citing Sanders v. State, 42 Ala.App. 419, 167 So.2d 174 (1964).
The section of the Alabama Bail Reform Act that expressly grants a defendant a right to bail is § 15-13-108. It secures a right to bail prior to conviction, stating: “In all cases of misdemeanors and felonies, unless otherwise specified, the defendant is, before conviction, entitled to bail as a matter of right....” (Emphasis added.) Section 15-13-111 sets out the four types of bail available, and § 15—13— 120 provides that a defendant may substitute one form of bail for another. The defendants argue that they should be allowed to substitute another type of bail for cash bail. It is undisputed that the defendants have that right to bail and to substitute one type of bail for another before trial. However, the defendants argue that they should be allowed to substitute the type of bail after conviction as well.
The only section of the Bail Reform Act dealing with post-conviction activities is § 15-13-109, which provides that where a defendant has been placed on or granted probation, and is arrested on a probation-violation warrant, it shall be discretionary with the court as to whether bail is granted and, if so, in what amount. Therefore, it appears that post-conviction bail is discretionary under the Bail Reform Act and that requiring a cash-only bond on a post-conviction capias warrant does not violate the Act.
The defendants cite Rule 7.3(b), Ala. R.Crim. P., for the proposition that cash-only bail is not a permissible condition of release. Rule 7.3 provides the conditions that may be attached to bail so as to preserve the safety of the public and to assure that the defendant will return to court. The defendants argue that because Rule 7.3(b) does not specifically state that a cash-only bail is a condition, the City cannot implement its new bail policy. However, Rule 7.3(b) provides that the judge can require an appearance bond or a secured appearance bond as a condition of release, which would include cash bail. Moreover, we note that Rule 7.2, Ala. R.Crim. P., sets forth the factors the trial court may consider in setting bail, and the comments to Rule 7.2 state that Rule 7.2(c) “recognizes that after conviction the defendant is no longer presumed innocent and is not entitled to admission to bail as a matter of right.”
Additionally, Rule 26.11(i)(l), Ala. R.Crim. P., sets out the factors a court is to consider when imposing a fine upon the defendant. Rule 26.11 provides that incarceration shall not automatically follow the nonpayment of a fine and that incarceration for nonpayment “should be employed only after the court has examined the reasons for nonpayment,” considering such things as “the defendant’s situation, means, and conduct with regard to the nonpayment of the fine.” In the present case, the municipal court judge reviewed *519 the defendants’ history with regard to the fines, placed them on probation, and released them.
The defendants cite Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), and Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), in support of their equal-protection argument. In Williams, the narrow issue discussed by the court was whether an indigent defendant may be kept in confinement beyond his maximum term specified by statute, because of his failure to satisfy the monetary provisions of his sentence. The defendant was convicted of petty theft and received the maximum sentence prescribed by law: one year’s imprisonment and a $500 fine. He was also taxed $5 in court costs. An Illinois statute provided that if a defendant was in default of the payment of the fine and court costs at the expiration of one year, then the defendant should remain in jail and “work off’ the monetary obligations at a rate of $5 per day. The defendant in Williams, to pay off his fines, would have been incarcerated for 101 days beyond the one-year sentence. The Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment requires that the statutory ceiling placed on imprisonment for any substantive offense be the same for all defendants irrespective of their economic status.
In Tate, the defendant was an indigent who had been convicted of traffic offenses and fined a total of $425. Although Texas law provides only for fines for traffic offenses, it requires that those defendants unable to pay the fines be incarcerated for sufficient time to satisfy the fines, at a rate of $5 a day. The Supreme Court held that, as in Williams, this case presented the same kind of invidious discrimination whereby the defendant was subject to imprisonment because of his indigency. The Tate court emphasized that its holding did not suggest any constitutional infirmity in imprisoning a defendant who has the means to pay a fine but who refuses or neglects to do so.
Both Williams and Tate are distinguishable from the present case. Williams specifically deals with a defendant who, solely because of his indigency, had been incarcerated for a period in excess of the maximum penalty for the crime that he was convicted of. Tate concerns a fine converted into a jail sentence solely because the defendant was indigent and unable to pay it. The holdings go no further.
In the present case, the defendants had capias warrants against them for their failure to pay post-conviction fines. The time for appeal had run and neither defendant had appeared in court to tell why he had not paid. The municipal-court judge determined that both defendants had the means to pay their fines, and they were released from jail after the indigency hearing and were placed on probation. We hold that the defendants did not show that the City’s new bail policy violated the Alabama Constitution, the Bail Reform Act, the Rules of Criminal Procedure, or the Equal Protection Clause. Therefore, the defendants are not entitled to an injunction preventing the enforcement of the City’s new bail policy requiring cash bail on post-conviction capias warrants.
AFFIRMED.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.