The petitioner, Harold Singleton, filed this petition for a writ of habeas corpus requesting that we lower the amount of his cash bail, set at $150,000. In January 1999, Singleton was indicted for theft of property in the first degree, for receiving stolen property, and for obscuring the identity of a vehicle. The grand jury fixed bail at $10,000. After Singleton was indicted, the State moved that bail be increased. In February 1999, Singleton's bail was increased to $150,000 and was limited to cash only. Singleton was eventually arrested in Arkansas in May 2004. He waived extradition and was returned to Alabama. Singleton moved that his $150,000 cash bail be reduced. That motion was denied. Singleton then filed a petition for a writ of habeas corpus in the Cullman Circuit Court. That petition was denied; this original petition for a writ of habeas corpus followed.
Singleton first argues that the "cash only" bail set in his case violates Art. I, § 16, Ala. Const. 1901, because he has a constitutional right to bail by "sufficient sureties." Art. I, § 16, provides:
 "That all persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption *Page 133 
great; and that excessive bail shall not in any case be required."[1]
(Emphasis added.)
Alabama has had six state constitutions in the years 1819, 1861, 1865, 1868, 1875, and 1901. Alabama's first Constitution contained the provision: "All persons shall, before conviction, be bailable by sufficient securities. . . ." Art. I, § 17, Ala. Const. 1819. That provision remained intact in the Constitution of 1861 but was amended in the Constitution of 1865 to read: "That all persons shall, before conviction, be bailable bysufficient sureties. . . ." Art. I, § 17, Ala. Const. 1865. In the Alabama Constitution of 1901, that provision was moved, in toto, to Art. I, § 16 of the Bill of Rights.
When Art. I, § 16, Ala. Const. 1901, was adopted there was no discussion of this provision because it was identical to the provision contained in the 1875 Constitution. See OfficialProceedings of the Constitutional Convention of 1901. In 1865 when the term was changed from "sufficient securities" to "sufficient sureties," there was no discussion of the change in the record of the official proceedings. However, we are aware of the Alabama statutes that were enacted and the rules of court that were adopted after the Alabama Constitution of 1901 was ratified.
The Alabama Legislature enacted the Alabama Bail Reform Act of 1993 ("the Act") to address the evolving changes in bail and the emergence of the professional bonding company as an entity. That Act provides for four different types of bail: cash bail, judicial public bail, professional surety bail, and property bail, see § 15-13-111, Ala. Code 1975; it defines what constitutes each form of bail. The Act also addresses bond forms,[2]
the obligations of undertaking bail, the arrest of a person on bail by a surety or his agent, and the forfeiture of bail.
After the passage of the Act, the Alabama Supreme Court adopted Rule 7, Ala.R.Crim.P., which establishes discretionary guidelines to assist judges in setting bail. Rule 7.3 addresses the mandatory conditions and additional conditions a judge may place on the granting of bail. Rule 7.3(b)(1), Ala.R.Crim.P., states that the judge setting bail may order the "[e]xecution of an appearance bond in an amount specified by the court, either with or without requiring that the defendant deposit with the clerk security in an amount as required by the court." Rule 7.3(b)(6), provides that the judge may also place "[a]ny other conditions which the court deems reasonably necessary." Rule 7 clearly places great discretion in the judge setting the amount of bail and the terms of a release order.
The only Alabama case to address an issue similar to the one now before us is Williams v. City of Montgomery, *Page 134 739 So.2d 515 (Ala.Civ.App. 1999). The Williams court addressed whether a cash-only bail after conviction violated Art. I, § 16, Ala. Const. 1901. That Court held that the Alabama Constitution of 1901 addressed only pretrial release — not release after conviction; therefore, there was no state constitutional provision against setting an excessive bail after conviction. The court did note: "Rule 7.3(b) provides that the judge can require an appearance bond or a secured appearance bond as a condition of release, which would include cash bail." Williams,739 So.2d at 518 (emphasis added).
Though we have not specifically addressed the issue presented in this case, we agree with the rationale of the Supreme Court of Iowa when upholding the setting of a cash-only bail against a claim that it violated an identical constitutional provision. As the Supreme Court of Iowa so eloquently stated:
 "The gradual emergence of the sufficient sureties clause and the very limited record of its eventual inclusion in our constitution requires us to draw our conclusions on its meaning and application from the historical development of the bail system and other contextual indicators of its meaning. Ultimately, we believe the core purpose of the clause was to guarantee a bailable individual access to a surety of some form. However, a number of factors leads us to conclude that the framers did not intend that such access be unfettered or tied specifically to a commercial bonding process.
 "The strongest support for our conclusions rests on the language of the clause itself in historical perspective. We believe the framers were at least familiar with the history of the bailing process and the role of surety in that process. Moreover, we know that the framers were familiar with the provisions of other constitutive documents and regularly referenced them in the course of debating drafts of our constitution. . . . These factors indicate that the framers were conscious of the historical lineage of the words they chose and meant what they said: `[a]ll persons shall . . . be bailable, by sufficient sureties,' subject to some exceptions. Iowa Const. art. I, § 12 (emphasis added). We believe this was a clear creation of a right to access a surety of some form. However, this language does not indicate that the framers intended that a person should be bailable by any surety without limit.
 "To the contrary, the framers chose an explicit limitation on access to a surety by using the word sufficient in the sufficient sureties clause. By including this qualification for a surety, the framers carved out a measure of discretion for the person overseeing the bailing process. This was consistent with the historical approach to sureties. . . . Moreover, we believe this investment of discretion with the judicial officer was part of a quid pro quo for a bailable individual that reflected the historical relationship between the state, the prisoner, and the surety.
 "Our framers chose to provide a limited right to bail in the Iowa Constitution, and provided some protection for this right in that a sufficient surety could bail an accused individual. In exchange, the framers created a potential exception by which the state could retain oversight over this process. Ultimately, this trade off served what has long been acknowledged to be the primary purpose of bail: assuring a defendant's appearance in court. . . . The defendant was given a right to be bailed, subject to the state's analysis of a surety's sufficiency to provide adequate recompense if the prisoner did not show for his judicial proceedings. By allowing a court to *Page 135 
judge the sufficiency of the surety, the court was also permitted to judge — implicitly — the sufficiency of the surety's interest in making sure the prisoner was present for further court proceedings. Yet, no part of this process dictates unfettered access to a surety for a prisoner. In fact, unfettered access would be contrary to the language of our constitution and, indeed, the long history of the bail system's development and operation.
 "We are also confident that the framers did not intend to favor one particular method of surety — commercial bonding — by inclusion of the sufficient sureties clause. The historical record bears out that the concept of commercial bonding was emerging around the time of our constitution's framing [1844-1846]. This emergence brought to light a new concept that deviated from the traditional methods of personal, monetary, or property surety that featured highly personalized contact between the state, the prisoner, and the surety. While it is possible that our framers had both traditional and commercialized surety in mind when drafting the sufficient sureties clause, we do not believe the traditional form of surety had been fully eclipsed nor was the commercial form truly ascendant. At most, our framers had both forms in mind. To conclude the sufficient sureties clause extends an unfettered right to a commercial bail bondsmen contradicts the language of our constitution as well as historical reality."
State v. Briggs, 666 N.W.2d 573, 581-83 (Iowa 2003) (footnote omitted). Compare State v. Brooks, 604 N.W.2d 345 (Minn. 2000) (holding that constitution prohibited a cash-only bail because the constitution contained the phrase "bail by sufficient sureties"); State ex rel. Jones v. Hendon, 66 Ohio St.3d 115,609 N.E.2d 541 (1993) (holding a cash-only bail improper based on the wording of its constitution and its rules of court).
Based on the wording of the Alabama Constitution of 1901, our statutes, and our rules we cannot say that Art. I, § 16, Ala. Const. 1901, prohibits a judge from setting a "cash only" pretrial bail.
Singleton also argues that his bail is excessive when compared with the bail recommended by the bail schedule contained in Rule 7.2, Ala.R.Crim.P.
When denying Singleton's habeas corpus petition, the trial judge stated:
 "After hearing on Writ of Habeas Corpus, plaintiff herein present before the Court and represented by counsel, Tommy Drake, Esq., and Marcus Polson, Esq., and the Court having conducted the testimony of the plaintiff and the arguments of counsel, the Court finds the plaintiff to be held in Cullman county jail pursuant to his arrest on May 3, 2004, on the grand jury indictment issued in January 1999 and charges of theft of property, lst degree, receiving stolen property, lst degree, and obscuring identity of a vehicle. The plaintiff was arrested in the State of Arkansas and waived extradition to Alabama. The State of Mississippi has issued a `hold' on the plaintiff regarding similar charges. His arrest was part of a multistate investigation into auto theft rings. A recent search pursuant to a warrant in Cullman County implicates the plaintiff in additional cases of the same nature as those for which he was indicted in 1999. The State asserts it has searched for defendant for the last five years and he has eluded it efforts. The Court further notes the plaintiff has a criminal history that includes a conviction for murder in Cullman County among other things and the State intends *Page 136 
to seek enhancement under the Habitual Felony Offender Act.
 "Based on the foregoing, the Court finds the bond of $150,000 cash only set by Judge H. Frank Brunner to be reasonable and necessary to ensure the plaintiff's appearance in Court to answer the charges. Accordingly, the writ is hereby quashed and held for naught. The plaintiff shall remain incarcerated until such time as he can post bond in the amount of $150,000 cash only."
Based on the bail schedule contained in Rule 7.2, Ala.R.Crim.P., we do not believe that Singleton's bail is excessive. The recommended bail for theft of property and receiving stolen property is between $2,000 and $20,000. The recommended bail for obscuring the identity of a vehicle is between $1,000 and $10,000. Rule 7.2, Ala.R.Crim.P., also contains a list of factors that a court may use to determine whether the recommended bail should be increased. Those factors are:
 "1. The age, background and family ties, relationships and circumstances of the defendant.
 "2. The defendant's reputation, character, and health.
 "3. The defendant's prior criminal record, including prior releases on recognizance or on secured appearance bonds, and other pending cases.
 "4. The identity of responsible members of the community who will vouch for the defendant's reliability.
 "5. Violence or lack of violence in the alleged commission of the offense.
 "6. The nature of the offense charged, the apparent probability of conviction, and the likely sentence, insofar as these factors are relevant to the risk of nonappearance.
 "7. The type of weapon used, e.g., knife, pistol, shotgun, sawed-off shotgun.
"8. Threats made against victims and/or witnesses.
 "9. The value of property taken during the alleged commission of the offense.
 "10. Whether the property allegedly taken was recovered or not; damage or lack of damage to property allegedly taken.
 "11. Residence of the defendant, including consideration of real property ownership, and length of residence in his or her place of domicile.
 "12. In cases where the defendant is charged with a drug offense, evidence of selling or pusher activity should indicate a substantial increase in the amount of bond.
 "13. Consideration of the defendant's employment status and history, the location of defendant's employment, e.g., whether employed in the county where the alleged offense occurred, and the defendant's financial condition.
 "14. Any enhancement statutes related to the charged offense."
If convicted, Singleton faces a possible sentence of life imprisonment as a habitual offender. Based on Singleton's previous history and the possible sentence he faces if convicted we cannot say that the $150,000 cash bail is excessive in this case.[3]
For the foregoing reasons this petition is due to be denied.
PETITION DENIED. *Page 137 
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur; SHAW, J., concurs in the result.
[1] Justice Douglas of the United States Supreme Court, sitting as a Circuit Justice, in Bandy v. United States, 81 S.Ct. 197,5 L.Ed.2d 218 (1960) (Douglas, Circuit Justice), succinctly stated the purpose behind setting bail:
 "Th[e] traditional right to freedom during trial and pending judicial review has to be squared with the possibility that the defendant may flee or hide himself. Bail is the devise which we have borrowed to reconcile these conflicting interests. `The purpose of bail is to insure the defendant's appearance and submission to the judgment of the court.' Reynolds v. United States, 80 S.Ct. 30, 32, 4 L.Ed.2d 46. It is assumed that the threat of forfeiture of one's goods will be an effective deterrent to the temptation to break the conditions of one's release."
81 S.Ct. at 197, 5 L.Ed.2d at 219.
[2] Section 15-13-112 provides that bond forms are to be adopted by the Alabama Supreme Court.
[3] Singleton also argues that his bail should not have been raised before he was arrested and brought before the court; however, he states no grounds or caselaw in support of this contention. *Page 641