# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 34

**OCTOBER TERM, A.D. 2014**

**March 5, 2015**

FRISCO S. SAUNDERS,

Petitioner,

v.

SKIP HORNECKER, Sheriff of Fremont County,

Respondent.

S-14-0171

TIMOTHY M. DWYER,

Petitioner,

v.

SKIP HORNECKER, Sheriff of Fremont County,

Respondent.

S-14-0172

BYRON AMOS,

Petitioner,

v.

SKIP HORNECKER, Sheriff of Fremont County,

Respondent.

S-14-0173

*Original Proceeding*
*Petitions for Writ of Certiorari*
*Circuit Court of Fremont County*
*The Honorable Robert B. Denhardt, Judge (Docket No. S-14-0171)*
*The Honorable Wesley A. Roberts, Judge (Docket Nos. S-14-0172 and S-14-0173)*

*Representing Petitioners:*

Daniel O. Caldwell, III, Senior Assistant Public Defender.

*Representing Respondent:*

Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; James M. Causey, Senior Assistant Attorney General; Caitlin F. Young, Assistant Attorney General. Argument by Mr. Causey.

***Before BURKE, C.J., and HILL, DAVIS, and FOX, JJ., and DAY, D.J.***

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAY, District Judge.**

[¶1]  Petitioners Byron Amos, Timothy Dwyer, and Frisco Saunders were held in the Fremont County Detention Center on unrelated criminal charges.  None of the Petitioners were able to post the cash-only bail imposed by the lower courts as a condition of their pretrial release, and each Petitioner therefore remained in jail pending trial.  In these consolidated cases, Petitioners request a determination from this Court that cash-only bail is impermissible under the Wyoming Constitution and Rules of Criminal Procedure.  We affirm the lower courts' use of cash-only bail in this case and hold that cash-only bail does not violate Article 1, Section 14 of the Wyoming Constitution or Wyoming Rule of Criminal Procedure 46.1.

## ISSUES

[¶2]  Petitioners present a single issue for the Court's review, stated as follows:

> Whether the term "shall be bailable by sufficient sureties" as found in Article 1, Section 14 of the Wyoming Constitution and W.R.Cr.P. 46.1 authorizes the setting of a "cash only" bond in criminal proceedings.

The State presents two issues on appeal:

> 1.  In Wyoming, a petition for habeas corpus relief is limited to questions concerning the jurisdiction of the trial court.  Does the imposition of a cash-only bond implicate the jurisdiction of the court?
>
> 2.  Article 1, Section 14 of the Wyoming Constitution and W.R.Cr.P. 46.1 provide that criminal defendants "shall be bailable by sufficient sureties."  In three noncapital cases involving different defendants, the Fremont County Circuit Court determined that each defendant would be bailable by a cash-only bond in an amount set by the court.  Does imposition of cash-only bail violate the Wyoming Constitution or the Wyoming Rules of Criminal Procedure?

## FACTS

[¶3]  On May 4, 2014, Riverton Police officers responded to a report that someone fired a gun in the men's restroom of a bar.  Upon arrival, the officers saw three men restraining Mr. Amos.  The police searched Mr. Amos and found he was concealing a handgun.

1

[¶4]   Mr. Amos was arrested on charges of interference with a peace officer in violation of Wyo. Stat. Ann. § 6-5-204(a) and carrying a concealed weapon in violation of Wyo. Stat. Ann. § 6-8-104(t)(vii).  He was arraigned on May 6, 2014 and a bond was set as $2,000 "CASH BAIL."  Mr. Amos was not able to post the required $2,000 in cash and remained in jail pending trial.  He entered a guilty plea on August 1, 2014.  Mr. Amos was sentenced to 180 days in jail with credit for the 90 days of time served while he awaited trial.

[¶5]   On June 10, 2014, Mr. Dwyer turned himself in on an active arrest warrant for failing to appear in circuit court concerning an earlier charge of failure to maintain liability coverage.  Mr.  Dwyer was arraigned and his bond was set as $500 "CASH BAIL."  Mr. Dwyer was not able to post the $500 cash bond and remained in jail.  On July 3, 2014, Mr. Dwyer entered a guilty plea.  He was sentenced to 23 days in jail, which was the equivalent of the time he had already served in jail pending trial.

[¶6]   On June 4, 2014, Mr. Saunders was arrested on a warrant and charged with one count of aggravated assault and battery.  On June 5, 2014, the circuit court set his bond as $100,000 "CASH BAIL."  His charges were bound over to the district court and the bond was continued.  Mr. Saunders was unable to post the required $100,000 in cash and remained in jail pending trial after entering a not guilty plea.

[¶7]   On June 26, 2014, each Petitioner filed a petition to this Court for habeas corpus relief seeking immediate release from the Fremont County Detention Center.  Each of the Petitioners asserts his petition requires interpretation of both a constitutional provision and the Wyoming Rules of Criminal Procedure and, thus, this Court is best suited to make those interpretations.  The Petitioners also assert this Court is the appropriate venue because if the questions of interpretation were decided at the district court level, the decision would not apply in other districts in the state.  This Court consolidated the petitions for review.

### STANDARD OF REVIEW

[¶8]   The interpretation and application of the Wyoming Constitution is a question of law, reviewed *de novo*.  *E.g.*, *Harmon v. Star Valley Med. Ctr.*, 2014 WY 90, ¶ 16, 331 P.3d 1174, 1178 (Wyo. 2014).  The interpretation of criminal procedure rules is also a question of law subject to *de novo* review.  *E.g.*, *Deeds v. State*, 2014 WY 124, ¶ 39, 335 P.3d 473, 483 (Wyo.  2014).

### DISCUSSION

**A.    Mootness**

[¶9]   As a threshold matter, the Court notes at least two of the three Petitioners are no

longer in jail and their convictions have been entered, which raises an issue of mootness. This Court has stated that challenges to bail are generally moot after a conviction. *Vigil v. State*, 563 P.2d 1344, 1346 (Wyo. 1977). However, a court can proceed to decide technically moot issues where (1) the issue is of great public importance; (2) it is necessary to decide the issue to provide guidance to agencies or to the lower courts; or (3) the controversy is capable of repetition yet evading review. *E.g.*, *Circuit Court of the Eighth Judicial Dist. v. Lee Newspapers*, 2014 WY 101, ¶ 12, 332 P.3d 523, 528 (Wyo. 2014) (citing *Operation Save Am. v. City of Jackson*, 2012 WY 51, ¶¶ 22, 23, 275 P.3d 438, 448–49 (Wyo. 2012)).

[¶10] We conclude that the question of whether cash-only bail is unconstitutional or in violation of the Wyoming Rules of Criminal Procedure falls under the exception for issues that are likely to evade review. Pretrial bail issues are generally short-lived. Thus, failure to decide this issue impacts those defendants who are unable to post cash-only bail. Further, a decision on this matter will provide guidance to the lower courts in Wyoming. Accordingly, we find a sufficient basis for providing review of the Petitioners' claims in this case.

## B. Habeas Relief

[¶11] Before addressing the merits of this case, we must first address whether a petition for habeas corpus is the appropriate avenue for obtaining relief in this case. Petitioners seek habeas corpus relief directly from this Court through Rule 3 of the Rules of the Supreme Court of Wyoming, in effect at the time the petitions were filed.[1] The Petitioners assert this Court is the appropriate venue, without first resorting to lower courts, because the petitions present constitutional questions and questions of statutory

---

[1] Rule 3 provided:

> In any application made to the court for a writ of habeas corpus, mandamus, quo warranto or for any prerogative writ to be issued in the exercise of its original jurisdiction and for which an application might have been lawfully made to some other court in the first instance, the petition shall, in addition to the necessary matter requisite by the rules of law to support the application, also set forth the circumstances which, in the opinion of the applicant, render it necessary or proper that the writ should issue originally from this court, and not from such other court, and the sufficiency or insufficiency of such circumstances so set forth in that behalf will be determined by the court in awarding or refusing the application.

The Rules of the Supreme Court were amended in November 2014, with an effective date of January 14, 2015. Rule 3 was removed from the Rules of the Supreme Court. The writ, however, could also be brought under W.R.A.P. 13.01.

interpretation. The State asserts that habeas corpus proceedings are improper to review the constitutional permissibility of cash-only bail and can only be used to challenge the trial court's jurisdiction. *See, e.g.*, *Nixon v. State*, 2002 WY 118, ¶ 12, 51 P.3d 851, 854 (Wyo. 2002) ("Review in a state habeas corpus action is not time limited, but is seriously limited in scope so that defendants may only raise a claim going to the subject matter or personal jurisdiction of the court.") (citing *Hovey v. Sheffner*, 93 P. 305, 307–08 (Wyo. 1908)); *State ex rel. Hopkinson v. District Court, Teton Cnty.*, 696 P.2d 54, 60 (Wyo. 1985) ("A court's judgment cannot be impeached by a writ of habeas corpus except for jurisdictional reasons.") (citing Wyo. Stat. Ann. § 1-27-125 and *Hollibaugh v. Hehn*, 79 P. 1044 (Wyo. 1905)).

[¶12] This Court, however, has discretion to convert the current petition into either a petition for a writ of review or a petition for a writ of certiorari under W.R.A.P. 13.01.[2] *E.g.*, *State ex rel. Dep't of Workforce Servs. v. Hartmann*, 2015 WY 1, ¶ 16, 342 P.3d 377, 381–82 (Wyo. 2015) (converting an attempted appeal to a writ of review); *Schwab v. JTL Group, Inc.*, 2013 WY 138, ¶ 14, 312 P.3d 790, 794–95 (Wyo. 2013) (converting an appeal to a writ of review); *Stewart Title Guar. Co. v. Tilden*, 2005 WY 53, ¶ 7, 110 P.3d 865, 869–70 (Wyo. 2005) (converting an appeal to a writ of review); *Jones v. State*, 2003 WY 154, ¶ 8, 79 P.3d 1021, 1023 (Wyo. 2003) (recognizing the Court's conversion of a petition for writ of habeas corpus relief to a petition for writ of review in an earlier stage of the proceedings). While W.R.A.P. 13.01 expressly addresses writs of review, this Court has also addressed petitions for writ of certiorari pursuant to the same rule. *In re Gen. Adjudication of All Rights to Use the Big Horn River Sys.*, 803 P.2d 61, 67 (Wyo. 1990) (converting an attempted appeal to a writ of certiorari) (citing *Johnson v. Statewide Collections, Inc.*, 778 P.2d 93, 97 (Wyo. 1989); *Paull v. Conoco, Inc.*, 752 P.2d 415, 415 (Wyo. 1988)); *see In re SNK*, 2003 WY 141, ¶ 12, 78 P.3d 1032, 1036 (Wyo. 2003) (recognizing the Court's authority to convert a notice of appeal to a petition for writ of certiorari).

[¶13] The writ of review emanates from W.R.A.P. 13.02.

> A writ of review may be granted by the reviewing court to review an interlocutory order of a trial court in a civil or criminal action, or from an interlocutory order of an administrative agency, which is not otherwise appealable under these rules, but which involves a controlling question of law as to which there are substantial bases for difference of

---

[2] "All applications to the supreme court for interlocutory or extraordinary relief from orders of the district courts, including such applications as are established by statute (e.g., Wyo. Stat. 5-2-119 and 7-14-107), may be made as petitions for a writ of review. Granting of a petition is within the discretion of the supreme court." W.R.A.P. 13.01(a).

opinion and in which an immediate appeal from the order may materially advance resolution of the litigation.

The constitutional issue presented in this case is a matter of law, as to which there are substantial bases for a difference of opinion. There is a split in authority on this issue in other jurisdictions. This would support converting the petition for relief to a petition for writ of review. However, that conversion would not "materially advance resolution of the litigation" in this matter as required under W.R.A.P. 13.02, because at least two of the Petitioners are no longer in jail and there are no further proceedings pending before the trial court.

[¶14] The writ of certiorari, however, emanates from the Wyoming Constitution, Wyo. Const. art. 5, § 3, and is invoked when a case from a lower court involves an important state question or is of sufficient public significance to justify a determination by this Court. *In re Big Horn River Sys.*, 803 P.2d at 67 (citing *Stogner v. State*, 792 P.2d 1358 (Wyo. 1990)). Certiorari is particularly appropriate where the legality of a lower court's action is challenged on constitutional grounds. 14 Am. Jur. 2d *Certiorari* § 15 (2014). "The grant of a writ of certiorari not sought by petition is rare, however, and it will not serve as a substitute for a proper appeal if that is the appropriate remedy." *In re Big Horn River Sys.*, 803 P.2d at 68 (citing *Mayland v. State*, 568 P.2d 897 (Wyo. 1977)). But certiorari should be granted when "timely resolution of matters coming to our attention is of extreme and lasting importance to the citizens of this state and may contribute to judicial efficiency." *In re Big Horn River Sys.*, 803 P.2d at 67.

[¶15] This case involves a constitutional issue of significant public importance. Whether cash-only bail is permitted by the Wyoming Constitution is a question affecting all criminal defendants in the state seeking pretrial release. Conversion to a petition for writ of certiorari in this case also serves the interests of judicial economy. The parties at oral argument made clear that the other option available to the parties is to require Petitioners to refile this action as a declaratory judgment action, litigate that action, and then appeal to this Court. Such a use of judicial resources is inefficient and unnecessary.

[¶16] For the foregoing reasons, we conclude that conversion of the petitions for writ of habeas corpus to petitions for writ of certiorari is appropriate in this case. Consequently, consideration of the State's first issue is no longer necessary. We will continue our review as if the issues were properly before us on a writ of certiorari.

## C. *Sufficient Sureties—Article 1, Section 14*

[¶17] The primary issue before the Court is whether the imposition of cash-only bail violates Article 1, Section 14 of the Wyoming Constitution. That section states:

5

> All persons shall be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great. Excessive bail shall not be required, nor excessive fines imposed, nor shall cruel or unusual punishment be inflicted.

[¶18] The specific question to be answered is whether the term "sufficient sureties" in Article 1, Section 14 is to be read narrowly, so as to prohibit cash-only bail as Petitioners argue, or is to be read broadly, so as to encompass cash-only bail as the State argues. The term "sufficient sureties" is not defined in the Constitution and we have not previously had occasion to interpret that term.

### Principles of Constitutional Interpretation

[¶19] In cases requiring constitutional interpretation, this Court has explained:

> "We are guided primarily by the intent of the drafters." *Cantrell v. Sweetwater County Sch. Dist. No. 2*, 2006 WY 57, ¶ 6, 133 P.3d 983, 985 (Wyo. 2006).
>
>> The primary principle underlying an interpretation of constitutions or statutes is that the intent is the vital part, and the essence of the law. (Sutherland Stat. Const., Sec. 234, *People v. Potter*, 47 N.Y. 375 [(1872)].) "The object of construction, as applied to a written constitution, is to give effect to the intent of the people in adopting it. In the case of all written laws, it is the intent of the lawgiver that is to be enforced." (Cooley Const. Lim., 55.)
>
> *Rasmussen v. Baker*, 7 Wyo. 117, 128, 50 P. 819, 821 (1897). As explained at length in *Rasmussen*, in determining that intent we look first to the plain and unambiguous language used in the text of the Constitution:
>
>> Such intent . . . is that which is embodied and expressed in the statute or instrument under consideration. "The intent must be found in the instrument itself." (Cooley Const. Lim., 55; Sutherland Stat. Const., Sec. 234.) If the language employed is plain and unambiguous, there is no room left for construction. It must be presumed that in case of a constitution the people have intended whatever has

6

been plainly expressed. Courts are not at liberty to depart from that meaning which is plainly declared.

*Id.*

More recent decisions interpreting the Wyoming Constitution indicate that we have consistently held to the principle that the language of the text is of primary importance in constitutional interpretation:

> In construing our constitution, we follow essentially the same rules as those governing the construction of a statute. The fundamental purpose of those rules of construction is to ascertain the intent of the framers. *Geringer v. Bebout,* 10 P.3d 514, 521 (Wyo. 2000); *Zancanelli v. Central Coal & Coke Co.,* 25 Wyo. 511, 173 P. 981, 991 (1918). "We are charged with discerning the intent of the Constitutional Convention, and we look first to the plain and unambiguous language to discern that intent." *Geringer,* 953 P.2d at 843.

*Director of the Office of State Lands & Invs.,* ¶ 33, 70 P.3d at 252; *see also Cantrell,* ¶ 6, 133 P.3d at 985; *Cathcart v. Meyer,* ¶ 39, 88 P.3d at 1065; *Campbell County Sch. Dist. v. State,* 907 P.2d 1238, 1272 (Wyo. 1995). Further, in interpreting the plain and unambiguous language of the Constitution, we follow harmonizing rules similar to those employed when interpreting statutes.

> Our cases explain that every statement in the constitution must be interpreted in light of the entire document, rather than as a series of sequestered pronouncements, and that the constitution should not be interpreted to render any portion of it meaningless, with all portions of it read in pari materia and every word, clause and sentence considered so that no part will be inoperative or superfluous.

*Geringer v. Bebout,* 10 P.3d 514, 520 (Wyo. 2000); *see also Cathcart,* ¶ 40, 88 P.3d at 1065; *Management Council of the Wyo. Legislature v. Geringer,* 953 P.2d 839, 845 (Wyo. 1998).

7

*Powers v. State*, 2014 WY 15, ¶¶ 8, 9, 318 P.3d 300, 303–04 (Wyo. 2014). Applying these principles of constitutional interpretation, we must determine the meaning of "sufficient sureties" in Article 1, Section 14.

### *Definitions of "Surety"*

[¶20] Both parties point the Court to different definitions of "surety" to support their respective positions. Petitioners point to an 1850 dictionary definition quoted in *State v. Brooks*, a Minnesota Supreme Court case:

> One who is bound for another who is primarily liable and is called the principal. One who engages to be answerable for the debt, default, or miscarriage of another; one who undertakes to do some act in the event of the failure of another to do it, and as security for it being done.

604 N.W.2d 345, 353 (Minn. 2000) (quoting 2 Alexander M. Burrill, *New Law Dictionary and Glossary* 959 (N.Y. 1850)). Under this definition, Petitioners argue that it is clear that a surety is a third party promising to do something on behalf of another. This narrow reading of "surety" would not permit cash-only bail under the "sufficient sureties" provision of the Wyoming Constitution.

[¶21] The State, though, points to the definition of "surety" contained in the 2000 edition of Black's Law Dictionary: "[a] person who is primarily liable for paying another's debt or performing another's obligation" and "[a] formal assurance; esp[ecially] a pledge, bond, guarantee, or security given for the fulfillment of an undertaking." *Id.* at 1170. Under this definition, the State argues a surety includes an array of options and forms of security made or given to fulfill an obligation, including the posting of cash-only bail, and is not limited to the use of a third party. This broader reading of "surety" would permit cash-only bail to be imposed under the "sufficient sureties" provision of the Wyoming Constitution.

[¶22] This dichotomy of "surety" definitions was also in effect in the late nineteenth century when Wyoming's Constitution was drafted. For example, a dictionary published in 1895 provides a definition similar to that relied on by Petitioners:

> One who is bound with and for another who is primarily liable, and who is called the principal; one who enters into a bond or recognizance to answer for the appearance of another in court, or for his payment of a debt, or for the performance of some act, and who, in case of the failure of the principal, is liable to pay the debt and damages; a bondsman, a bail.

8

Robert Hunter, *American Encyclopaedic Dictionary* 3945 (1895).  On the other hand, there were other definitions of "surety" in effect in the late nineteenth century, more aligned with the definition cited by the State, including:  "Security against loss or damage; security for payment or for the performance of some act."  William Dwight Whitney, *Century Dictionary* 6081 (1895); *Webster's Dictionary of the English Language* 559 (1895).

### *Other States' Interpretations of "Sufficient Sureties"*

[¶23]  In considering the meaning of "sufficient sureties" under Article 1, Section 14 of the Wyoming Constitution, we note this provision mirrors the bail clause adopted in other states' constitutions.[3]  Another court evaluating this issue found that more than two-thirds of the states have similar or identical provisions regarding "sufficient sureties."  *Brooks*, 604 N.W.2d at 352.  In Wyoming, "[d]ecisions in other states bearing on the same or similar constitutional language are afforded persuasive effect."  *Simms v. Oedekoven*, 839 P.2d 381, 384 (Wyo. 1992).  We therefore look to those decisions for guidance.

[¶24]  Courts in other states are split regarding the definition of "sufficient sureties."  Some courts interpret "surety" broadly—to allow a cash-only bail as a pledge of assurance.  Applying this broad definition, courts in Alabama, Arizona, Colorado, Iowa, Missouri, and New Mexico found that cash-only bail did not violate their state constitutions.  *Ex parte Singleton*, 902 So.2d 132 (Ala. Crim. App. 2004); *Fragoso v. Fell*, 111 P.3d 1027 (Ariz. Ct. App. 2005); *Fullerton v. County Court*, 124 P.3d 866 (Colo. Ct. App. 2005); *State v. Briggs*, 666 N.W.2d 573 (Iowa 2003); *State v. Jackson*, 384 S.W.3d 208 (Mo. 2012); *State v. Gutierrez*, 140 P.3d 1106 (N.M. Ct. App. 2006).  Some courts interpret "surety" narrowly—allowing only the use of a third-party bondsman and not allowing cash-only bail.  Applying this narrow definition, courts in Louisiana, Minnesota, Ohio, Tennessee, and Vermont have found that cash-only bail did violate their state constitutions.  *State v. Golden*, 546 So.2d 501, 503 (La. App. 2 Cir. 1989); *Brooks*, 604 N.W.2d at 353; *State ex rel. Jones v. Hendon*, 609 N.E.2d 541, 543–44 (Ohio 1993); *Lewis Bail Bond Co. v. General Sessions Court of Madison Cnty.*, No. C-97-62, 1997 WL 711137 (Tenn. App. Nov. 12, 1997); *State v. Hance*, 910 A.2d 874 (Vt. 2006).

---

[3] Although legislative history is generally only looked to when a provision in the constitution is ambiguous, *e.g.*, *Powers*, ¶ 39, 318 P.3d at 314; *State Farm Mut. Auto. Ins. Co. v. Kunz*, 2008 WY 71, ¶ 7, 186 P.3d 378, 380 (Wyo. 2008), the Court nevertheless notes that framers of the Wyoming Constitution engaged in little debate over the meaning of Article 1, Section 14, and there was no debate over the meaning of "sufficient sureties."  *See* Journals and Debates of the Constitutional Convention of the State of Wyoming 719 (1893).

[¶25] Courts evaluating this issue have looked at the history of bail and sureties in the United States for context to interpret "sufficient sureties." We find those histories to be instructive. The Missouri Supreme Court noted that the earliest bail provision in the United States predated the formation of the country, in a colonial provision in the Massachusetts Body of Liberties in 1641—"No mans person shall be restrained or imprisoned by any Authority what so ever, before the Law hath sentenced him thereto, If he can put in sufficient securitie, bayle or mainprise, for his appearance." *Jackson*, 384 S.W.3d at 211 (quoting Donald B. Verrilli, Jr., *The Eighth Amendment and the Right to Bail: Historical Perspectives,* 82 Colum. L. Rev. 328, 337 (1982)). The Iowa Supreme Court in *Briggs* provided an extensive, detailed history of the use of bail even earlier, in the English common law system, and of the bail system as it was adopted and developed in the United States. 666 N.W.2d 578–83. That bail and surety system needed to evolve in the United States as the population expanded out of the colonial borders and into the "seemingly limitless frontier." *Id.* at 580. When the Iowa Constitution was ratified in 1846, commercial bonding was just beginning to emerge. *Id.* at 583. The Iowa court determined that a variety of surety methods were used when its constitution was ratified, including but not limited to commercial or third-party bonding. *Id.* ("We are also confident that the framers did not intend to favor one particular method of surety . . . by inclusion of the sufficient sureties clause."). The Iowa Court went on to conclude that the word "sufficient" was a qualifying term which "carved out a measure of discretion for the person overseeing the bailing process. This was consistent with the historical approach to sureties." *Id.* at 582 (citing *Bail: An Ancient Practice Reexamined*, 70 Yale L.J. 966, 966 (1961)).

[¶26] A New Mexico appellate court reached the same conclusion. In *State v. Gutierrez*, 140 P.3d at 1110, the court noted that at the time the state's constitution was adopted, "there were many dictionary definitions of the term 'surety' that do not connote a third party." The court went on to agree with the Iowa Supreme Court's conclusion that "sufficient" is a qualifying term that provides the courts with the necessary "discretion to determine, under the particular facts and circumstances of each case, the type of secured bond needed to accomplish" the purpose of securing the defendant's return for trial. *Id.* at 1111.

[¶27] A similar result was reached in Arizona, further informed by the size of the sparsely populated state at the time of constitutional ratification. In *Fragoso v. Fell*, 111 P.3d at 1032–33, the Arizona Court of Appeals determined that the term "sufficient sureties" does not prohibit cash-only bail or require only commercial or third-party sureties. The court emphasized that the rural nature of the state at the time the constitution was drafted presented practical difficulties in the use of only commercial or third-party surety:

> [I]t is conceivable that bail by cash (or personal property of value such as a horse or a firearm) might have been the only

practical form of bail in Arizona when our constitution was adopted in 1910, particularly because of the transient nature of the population and the vast rural areas where a secured bond or a traditional, formal, third-party surety arrangement would not have been feasible.

*Id.* at 1033. The *Fragoso* court went on to conclude that "sufficient sureties" provides the judge or magistrate the discretion to impose conditions of release designed to achieve the purpose of bail, which is to ensure the appearance of the accused at trial. *Id.*

[¶28] The Minnesota Supreme Court, which ultimately held cash-only bail unconstitutional, also found that "surety" can mean a variety of methods to provide the necessary assurance of appearance. *Brooks*, 604 N.W.2d at 353 ("Surety can encompass a broad array of undertakings, often by a third person, that provide adequate assurance for the performance of an obligation.").

[¶29] The historical definitions of surety previously noted and the history of bail detailed in the above cases demonstrates that a third-party surety was not the only definition of surety in effect in the decades before, and after, the Wyoming constitutional provision regarding "sufficient sureties" was adopted in 1889.[4] Moreover, the practical difficulties of only allowing third-party sureties, to the exclusion of cash-only bail, applies as much to the developing Wyoming frontier at the time of our constitution's adoption as it did in Arizona. *Fragoso*, 111 P.3d at 1033.

[¶30] Nevertheless, Petitioners urge the Court to adopt the more narrow definition of surety that *only* contemplates an undertaking by a third party, thereby prohibiting cash-only bail. Petitioners heavily rely upon the Minnesota case of *State v. Brooks* that found cash-only bail unconstitutional. Importantly, however, the Minnesota Supreme Court found cash-only bail unconstitutional not because the definition of "surety" was limited to third-party sureties, but because the purpose of bail in that state is for the protection of the accused, rather than the court, and the bail clause "limits government power to detain an accused prior to trial." *Brooks*, 604 N.W.2d at 350.

### *Purpose of Bail*

[¶31] The *purpose of bail* proves to be the fulcrum upon which the meaning of "sufficient sureties" is tipped one way, in favor of a broad definition, or tipped the other way, in favor of a narrow definition. In evaluating the cases from other jurisdictions that

---

[4] Looking at the states that define "sufficient sureties" broadly, Missouri's first constitution was adopted in 1820; Iowa's first constitution was ratified in 1846; Colorado's constitution was adopted in 1876; Arizona's constitution was drafted in 1910; and New Mexico's constitution was ratified in 1911.

interpret "sufficient sureties" differently, the definition ultimately adopted was informed by the stated purpose of bail in those jurisdictions. In Iowa and Missouri, for example, the broad definition of "sufficient sureties" was adopted to allow cash-only bail in light of the fact that the purpose of bail in those states is to secure a defendant's appearance at trial. *Briggs*, 666 N.W.2d at 582, 584; *Jackson*, 384 S.W.3d at 215–17. In Minnesota and Ohio, on the other hand, the narrow definition of "sufficient sureties" was adopted to forbid cash-only bail because it was determined that the purpose of bail was to protect the accused. *Brooks*, 604 N.W.2d at 350, 353; *Hendon*, 609 N.E.2d at 544.

[¶32] This Court has stated that the *purpose of bail* in Wyoming is to ensure the defendant's presence to answer the charges without excessively restricting the defendant's liberty pending trial. *Miller v. State*, 560 P.2d 739, 742 (Wyo. 1977) (citing *U.S. v. Wright*, 483 F.2d 1068, 1069 (4th Cir. 1973)); *Vigil*, 563 P.2d at 1347 ("It has long been settled that the sole function of bail is to exact assurance from the accused that he will stand trial and submit to sentence if found guilty.") (quoting *Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 3 (1951)). This is consistent with the purpose of bail enunciated by the U.S. Supreme Court.[5] *Carlson v. Landon*, 342 U.S. 524, 567 n.14, 72 S.Ct. 525, 547 n.14, 96 L.Ed. 547 (1952); *Stack*, 342 U.S. at 4, 72 S.Ct. at 3.

[¶33] The reasoning of the *Brooks* court, relied on by the Petitioners, cannot be equally applied in Wyoming because the recognized purpose of bail in Wyoming is fundamentally different than that identified in Minnesota. The *Brooks* court found cash-only bail unconstitutional because it was not consonant with the constitutional purpose of bail in that state—to protect the accused.[6]

---

[5] The U.S. Supreme Court explained in *Stack v. Boyle*,

> The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty. Like the ancient practice of securing the oaths of responsible persons to stand as sureties for the accused, the modern practice of requiring a bail bond or the deposit of a sum of money subject to forfeiture serves as additional assurance of the presence of an accused. Bail set at a figure higher than an amount reasonably calculated to fulfill this purpose is "excessive" under the Eighth Amendment.

342 U.S. at 4–5, 72 S.Ct. at 3 (internal citation omitted).

[6] Additionally, the *Brooks* court noted it had previously determined that Minnesota's constitutional Bail Clause provision was broader than that of the Eighth Amendment of the U.S. Constitution by providing that *all* crimes are bailable. *Brooks*, 604 N.W.2d at 353 (discussing its holding in *State v. Pett*, 92 N.W.2d 205 (1958)). Wyoming has not so held. *Vigil*, 563 P.2d at 1349 (holding that Wyoming jurisprudence is consistent with the protections afforded by the federal constitution).

[¶34]  The purpose of bail in Wyoming, however, is different—to ensure the presence of the defendant at trial.  This weighs in favor of interpreting "sufficient sureties" broadly, to allow cash-only bail.  This distinction in the purpose of bail leaves the *Brooks* opinion unpersuasive to this Court.  Rather, we agree with the reasoning of the Iowa, Missouri, Arizona, and New Mexico courts discussed in this opinion.  First, the term "surety" refers to a variety of methods to ensure the appearance of the accused.  Second, the term "sufficient" provides the trial courts discretion to determine the surety appropriate in each case to achieve the purpose of bail, which is to ensure the appearance of the accused.

[¶35]  In sum, we hold that the term "sufficient sureties" refers to a broad range of methods to accomplish the primary purpose of bail in Wyoming, to secure the appearance of a defendant.  Those methods can include cash-only bail, as determined in the discretion of the trial court and subject to the constitutional safeguard that bail not be excessive.

## D.      *Sufficient Sureties—Wyoming Rule of Criminal Procedure 46.1(a)*

[¶36]  The final issue before the Court is whether the use of cash-only bail violates W.R.Cr.P. 46.1(a) which states:

> All persons shall be bailable by sufficient sureties, except for capital cases when the proof is evident or the presumption great.

[¶37]  This Court interprets rules of procedure using our usual rules of statutory construction.  *E.g.*, *Kovach v. State*, 2013 WY 46, ¶ 80, 299 P.3d 97, 122 (Wyo. 2013).

> In interpreting statutes, our primary consideration is to determine the legislature's intent.  All statutes must be construed *in pari materia* and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony.  Statutory construction is a question of law, so our standard of review is de novo.  We endeavor to interpret statutes in accordance with the legislature's intent.  We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.  We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia.*  When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction.  Moreover, we

13

must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation.

Moreover, we will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions.

*State v. Mares*, 2014 WY 126, ¶ 23, 335 P.3d 487, 497 (Wyo. 2014).

[¶38] The terms of the Wyoming Constitution control over the Wyoming Rules of Criminal Procedure. *Simms*, 839 P.2d at 385 ("The language of Article 1, Section 14 of the Constitution of the State of Wyoming provides without equivocation that 'all persons shall be bailable,' and it must control the right to bail over Wyo. R. Crim. P. 46.1(e)."). Because the Court holds that cash-only bail is allowed as "sufficient sureties" under the Wyoming Constitution, that holding applies to Rule 46.1(a) as well. "Sufficient sureties," as used in W.R.Cr.P. 46.1(a), permits a range of methods to ensure a defendant's appearance at trial, including cash-only bail.

[¶39] This holding is also consistent with the remainder of W.R.Cr.P. 46.1. After a person is confined to jail, that person may file a written request for pretrial release. W.R.Cr.P. 46.1(a)(1). The court, or other judicial officer, may order the release on the defendant's own recognizance or upon the execution of an unsecured appearance bond. Rule 46.1(b). However if those terms of release "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," additional conditions may be imposed for the pretrial release. Rule 46.1(c).

[¶40] Rule 46.1(c) provides a nonexclusive list of the types of conditions that a court may use or combine to reasonably assure the appearance of a person as required, including:

> (xi) Execute an agreement to forfeit upon failing to appear as required, such designated property, including money, as is reasonably necessary to assure the appearance of the person as required, and post with the court such indicia of ownership of the property or such percentage of the money as the judicial officer may specify;
>
> (xii) Execute a bail bond with solvent sureties in such amount as is reasonably necessary to assure the appearance of the person as required;
>
> . . .

14

(xv) Satisfy any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community.

[¶41] Reading the provisions of Rule 46.1 *in pari materia*, the Rule makes clear that the lower courts and judicial officers have broad discretion to condition a defendant's pretrial release, including discretion to impose cash-only bail.

### *CONCLUSION*

[¶42] Cash-only bail does not violate Article 1, Section 14 of the Wyoming Constitution or Wyoming Rule of Criminal Procedure 46.1(a), subject to the constitutional mandate that bail not be excessive. The petitions for writ of certiorari are denied.